## WILLIAM RANKIN *et al.*

*v.*

## RHODES RANKIN.

1. PRACTICE IN CHANCERY—*reference to master.* Where an interlocutory order referred a pending case to the master by consent of parties, "for hearing and determination on the merits," and required him to "render a decree on the merits, and report the same," although the terms of such reference are broader than is common, it must nevertheless be regarded as a reference for the opinion of the master, and his report as subject to the supervision of the court.

2. WILL—*power of executors to sell land under.* Where a testator directed his land to be sold, and the proceeds to be distributed among certain persons, without directing by whom such sale was to be made, and appointed executors who qualified, and sold the land at auction in good faith for a fair consideration, public notice by advertisement being first given: *Held*, that the will was to be considered as a bequest of a fund distributable by the executors among the legatees, and that the executors had power to sell the land in order to raise the fund without procuring a decree from a court of chancery for that purpose.

3. SAME. If a testator directs his estate to be sold for certain purposes, without declaring by whom the sale is to be made, if the proceeds are distributable by the executor, he takes the power to sell by implication.

4. SAME. Money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species of property into which they are directed to be converted.

WRIT OF ERROR to the Circuit Court of Fulton county; the Hon. C. L. HIGBEE, Judge, presiding.

This was a bill in chancery filed at the July term, 1859, of the Circuit Court, by the defendant in error as heir of John Rankin, deceased, against the plaintiffs in error, for the purpose of setting aside a sale and deed of real estate made by the executors of John Rankin, under which the plaintiffs in error claimed the title. On a final hearing, there was a decree in accordance with the prayer of the petition, and the defendants below sued out a writ of error. The facts are stated in the opinion of the court.

Messrs. Ross & WINTER, for the Plaintiffs in Error, relied upon the following points and authorities:

The only matter of controversy in this case is, whether the court below erred in decreeing that the will of John Rankin, deceased, conferred no power or authority upon his executors to sell any of his real estate " without the interposition of a proper court of equity or not."

The testator in his will directs his lands to be " disposed of," and " the proceeds " equally distributed between the named legatees. He did not bequeath the land to them, but the proceeds. They never derived any title to the land through the will.

In construing wills the rule is, the intention of the testator is to be collected from the whole will, and when so ascertained, must control the execution of the powers granted. 4 Kent, 534, 535, and authorities there cited.

Construing the will in this case by that rule, is it not the irresistible import of the terms of the will, that the testator's lands should be sold by his constituted executors and converted into money, and the money distributed among the legatees? Is it reasonable to presume it was the intention of the testator, in execuing his will, that in order to reduce his lands to money, his executors should incur to his estate the expense of a suit in equity before they could carry out his intentions?

The testator, by using the word " dispose," instead of sell, does not create any more difficulty. In *Bateman* v. *Bateman*, 1 Atk. 421, it was held, when the testator directed his executors to " raise " a sum out of the estate, they were authorized to sell the same. 2 Story's Eq. 1063.

It has also been held, that when a gross sum is directed to be raised out of " the rents and profits " of an estate, the trustee, who may be an executor, may raise it " by sale or mortgage." 2 Story's Eq. 1064.

The will in this case, in effect, if not in terms, directed that the land should be turned into money. It is to be regarded as that species of property, and this is the case without regard to

the manner the direction is given. *Craig* v. *Leslie*, 3 Wheat. 563; *Baker* v. *Copenbarger*, 15 Ill. 103; *January* v. *Smith*, 29 Ill. 116.

This being the case, the executor was entitled to the control of the lands as assets. The executors named in the will became, by their appointment, trustees under it, with plenary power to carry out the intentions of the testator in his devise, and will be held to be directed to do whatever may be necessary for the full execution of such intention, and to have been appointed for that purpose. *Peters* v. *Beverly*, 10 Peters, 565; *Devoux* v. *Fanning*, Johns. Ch. Cases, 254; *Jackson* v. *Lewis*, 15 Johns. 346; *Conklin* v. *Edgerton's Adm'rs*, 21 Wend. 443, 444.

Messrs. GOUDY, JUDD, BOYD & JAMES, for the Defendant in Error, relied upon the following points and authorities:

I.   In the court below, a decree was rendered in this cause by agreement of parties, referring the case to the master in chancery of Fulton county, "for hearing and determination on the merits," the decree reciting the fact of "the several parties agreeing to this decree," and requiring "the master to render a decree on the merits, and report the same."

The case stands, therefore, in the relation of an arbitration and award, and the plaintiffs are estopped from complaining of the finding or award.

Even a parol submission to arbitration is binding; and so is a parol award as to the matters so submitted. *Smith* v. *Douglas*, 16 Ill. 34; *Burnside* v. *Pott*, 23 Ill. 415.

II.   The will of John Rankin, deceased, does not authorize his executors to sell the land in controversy; nor does it charge them with any duty or authority with respect to the produce; nor is the produce to be confounded with the personal property, nor is it to be used to pay debts.

1.   Where there is a general direction in the will to sell, but it is not stated by whom the sale is to be made, there, if the produce is to be applied by the executors in the execution of

their office, a power to sell will be implied to the executors, but not otherwise. *Tylden* v. *Hyde*, 3 Simons & Stuart, 238 ; *Bateman* v. *Bateman*, 1 Atkyns, 421 ; *Winston* v. *Jones et al.*, 6 Ala. 550.

2. And so where the produce of the land is to be blended with the personal estate, which must necessarily be divided by executors, the power to sell will vest in the executors by implication. *Tylden* v. *Hyde*, 2 Sim. & Stu. 238 ; also, the other cases above cited ; 1 Lomax on Executors, 582.

3. "To enable executors to sell, the power must either be expressly given to them, or necessarily to be implied from the produce being to pass through their hands in the execution of their office, as in payment of debts or legacies ; but where the executors have nothing to do with the produce of the sale, nor any power of distribution with respect thereto, there is no power of sale in the executors." *Bentham* v. *Wiltshire*, 4 Maddock, 44 ; *Patton* v. *Randall*, 1 Jac. & Walk. 189 ; 1 Williams on Executors, *451 ; *Blatch* v. *Wilder*, 1 Atkyns, 420 ; *Bateman* v. *Bateman*, ib. 421 ; 1 Sugden on Powers, 6th ed. 138, 139 ; 1 Lomax on Executors, 582 ; 4 Kent's Com. 326.

The case in Maddock, above cited, is precisely analagous to the one at bar.

The cases cited on plaintiffs' brief all sustain the same view, viz. : *Peters* v. *Beverly*, 10 Peters, 565 ; *Jackson* v. *Farris*, 15 Johns. R. 346 ; *Conklin* v *Edgerton's Adm'rs*, 21 Wend. 443, 444.

4. "It has never been questioned that where a testator directs his estate to be sold, but gives no power to his executor to sell, that in such cases a sale by the executor is illegal." *Drayton* v. *Drayton*, 2 Desaussure's Eq. R. 250.

5. "A power of sale, as a general rule, whether it be a common law authority, or one taking effect under the statute of uses, can be exercised only by the parties to whom it is expressly given." Hill on Trustees, 472.

6. The right of an executor to sell land can only be derived under a special authority ; whereas, the executor by law has a right to the possession of, and to sell, personal property. 1

Lomax on Executors, 589; Toller's Law of Executors, 133, 416.

7. The moneys proceeding from the sale of the real estate, directed to be divided among the testator's children, are not *legacies* within the meaning of the law. *Bentham v. Wiltshire,* 4 Maddock, 44.

A legacy is defined to be "some particular thing or things given or left, either by a testator in his testament, wherein an executor is appointed, to be paid or performed by his executor, or by an intestate in a codicil or last will, wherein no executor is appointed, to be paid or performed by an administrator." Williams on Executors, 771.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

In 1852 John Rankin died, in Fulton county, leaving a will, which contained the following clause: "My farm, thirty-five acres and upwards, to be disposed of to the very best advantage, either in a body or divided into lots, and the proceeds thereof to be divided into four equal parts, as follows: One-fourth to be divided equally among and given to the heirs of my son Stephen; one-fourth to be given to my son William; one-fourth to be given to my son Rhodes; and one-fourth, or the balance of the proceeds of said land, to be given to my daughter Abigail." He appointed, as his executors, his son and son-in-law, William Rankin and Joseph Beans, who duly qualified, and, in 1853, as such executors, sold said land at public auction, after advertising the sale by posting notices, and by publication in a newspaper. This bill is filed by Rhodes Rankin, one of said devisees, for the purpose of setting aside said sale. It charges fraud in the sale, but these allegations are unsustained by proof, and, in their brief, the counsel for the complainant rest their case, as to its merits, entirely on the question whether the clause of the will, above quoted, authorized the executors to make the sale without invoking the aid of a court of equity.

They first, however, raise a preliminary point upon the report

19 — 36 ILL.

of the master in chancery. A decree was rendered by the court below, by consent of parties, referring the case to the master, "for hearing and determination on the merits," and requiring him "to render a decree on the merits, and report the same." It is urged by the counsel for the defendant in error, complainant below, that this is to be considered as an arbitration and award, by which the parties are concluded. Even if it could be considered as an award, the parties must be left to their common law remedies. It is only upon awards made in pursuance of our statute, that the court can pronounce a judgment or decree. *Low* v. *Nolte*, 15 Ill. 368. In that case the parties had agreed that the court should enter judgment upon the award, but exceptions being taken, the court refused. Here the party claiming the benefit of the award, is the complainant who asks the decree. For that purpose the award is unavailing. The statute requires a suit pending in court, if referred to arbitration, to be submitted to three arbitrators. In this, as in other respects, the award, if it could so be called, does not conform to the statute. It is not, however, to be supposed that the parties intended anything more than an ordinary reference to a master, for the purposes of a report, to which exceptions could be filed, according to the usual practice. The reference is much broader than is common, but can still be only considered as a reference for the opinion of the master, and for the preparation of a decree by him, subject to the supervision of the court, to which he is required to report. In England, and in some of our sister States, there are certain classes of questions, judicial in their character, which are always referred to masters, such as exceptions to bills for scandal or impertinence, or exceptions to depositions. This practice is also adopted by some of our circuit judges, but the action of the master is of course always subject to the supervision of the court.

We now come to the construction of the will. No question can be, nor indeed is made, as to the intent of the testator that the land should be sold. But it is urged that the executors had no power to make the sale. "It sometimes happens," says Williams on Executors, p. 413, "that a testator directs his

estate to be disposed of for certain purposes, without declaring by whom the sale shall be made. In the absence of such a declaration, *if the proceeds be distributable by the executor*, he shall have the power by implication. Thus a power in a will to sell or mortgage, without naming a donee, will, unless a contrary intention appear, vest in the executor, if the fund is to be dis tributable by him, either for the payment of debts or legacies.' This principle is well settled, and is not controverted by the counsel for the defendant in error, but it is contended that the proceeds of this sale were not distributable by the execu- tors. The same learned author whom we have already quoted, on page 414, uses the following language : " It is an established doctrine in courts of equity, that things shall be considered as actually done, which ought to have been done, and it is with reference to this principle that land is under some circumstances regarded as money, and money as land. It is laid down by Sir Thomas Sewell, in *Fletcher* v. *Ashburner*, 1 Bro. C. C. 497, " that nothing was better established than this principle, that money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be con- sidered as that species of property into which they are directed to be converted." It follows, therefore, that every person claim- ing property, under an instrument directing its conversion, must take it in the character which that instrument has impressed upon it; and its subsequent devolution and disposi- tion will be governed by the rules applicable to that species of property." This principle is familiar law, and has been recog- nized to the fullest extent by this court in *Baker* v. *Copenbarger*, 15 Ill. 103, and *January* v. *Smith*, 29 Ill. 116.

This principle is decisive of this case. The land was directed to be sold, and its proceeds divided among certain persons named in the will. It was, then, to be considered as a bequest of money. In the language above quoted, and the accuracy of which was approved in *Wheldale* v. *Partridge*, 5 Ves. 396, " it is to be considered as that species of property into which it was directed to be converted." It is then a fund distributable by the executors to the devisees, and, as such, passes through

their hands by virtue of their office. This gave them the power to sell, according to the principle stated above in Williams on Executors. The same principle is laid down in the 4th edition of Sugden on Powers, where all the cases are collected. The case of *Bentham* v. *Wiltshire*, 4 Mad. 44, cited by the counsel for the defendant in error, is not really adverse to this, because there the estate was devised to the wife for her life, to be sold after her decease, and the money to be then distributed. The wife and another person were appointed, by the will, executors. The court held they had no power to sell, and gave, as the reason, that they had nothing to do with the proceeds of the sale. They could not have, because the sale was not to take place until after the death of one of the executors. The case is in perfect harmony with the principles above set forth.

It is urged that moneys proceeding from the sale of real estate, directed to be divided among the testator's children, are not legacies. " Of legacies," says Toller on Executors, p. 301, "there are two descriptions: a general legacy, and a specific legacy. The former appellation is expressive of such as are pecuniary, or merely of quantity." " A mere bequest of *quantity*, whether of money or of any other chattel, is a general legacy, as of a quantity of stock. And where the testator has not such stock at his death, such bequest amounts to a direction to the executor to procure so much stock for the legatee." The same distinction is laid down in other text writers. 4 Bac. Abridg. 337, 425 ; 2 Bl. Com. 512.

This was a bequest of the proceeds of certain real estate directed by the testator to be sold for the purpose of conversion .into money. In the view of a court of chancery it was a bequest of money. Had it been, in terms, such bequest, it would have been the duty of the executors to distribute the fund to the legatees, and it clearly follows, from the principles above laid down, that they took by implication a power to sell, and thus convert the land into money, and distribute the proceeds. This power they seem to have exercised fairly and in good faith, and the sale by them should be sustained.

*Decree reversed and case remanded.*