Executors of DAVID M. POTTER

*v.*

SARAH K. ADRIANCE et al.

A testator, by his will, provided that at any time after his son Stephen should attain the age of twenty-one years, "and a majority of the heirs so directing, the real estate may be sold either by public or private sale, as a whole or in lots, and upon such terms as a majority of the heirs shall decide upon," and that one-third of the proceeds of such sale should be given to his wife, and the remaining two-thirds of such proceeds should be divided among his six children share and share alike; and then appointed his wife and one of his sons executrix and executor of the will.—*Held*, that the executor and executrix have power to sell when a majority of those to whom the land descended exercise the discretion required of them by the will, and that it will be the executors' duty to distribute the proceeds of sale. Also, that the discretion to be exercised involves the determination whether the real estate shall be sold at public or private sale and as a whole or in lots, and also the " terms " of sale; and that by the word "terms" is meant the cash to be required at the time of the bargain and at the time of the conveyance, the limit of credit to be allowed in money, time and security, the character of the vendees, the restrictions of the uses to which the lands sold shall be put, and the like.

On bill for construction of will.

*Mr. Joseph Cross,* for the complainants.

THE CHANCELLOR.

The bill is filed for the construction of the will of David M. Potter, deceased. The will was made on the 5th day of December, 1872, and the testator died on the 3d day of February, 1879. The will directs that the testator's debts and funeral expenses shall be paid, and then gives the entire personal estate to his wife, in her own right, and provides that no account shall be rendered therefor. It proceeds as follows:

"*Item.* I direct that all my real estate shall remain under the absolute control of my wife until my son, Stephen S. Potter, becomes of age, and I also

Potter v. Adriance.

direct that my wife shall have the use of the house and one-third of the proceeds of the farm until sold.

"*Item.* At any time after my son, Stephen S. Potter, attains the age of twenty-one years, and a majority of the heirs so directing, the real estate may be sold either by public or private sale, as a whole or in lots, and upon such terms as a majority of the heirs shall have decided upon.

"*Item.* Whenever the real estate or any portion thereof is sold, I direct that one-third of the proceeds of such sale be given to my wife in her own right, and the residue and remainder thereof to be equally divided among my children, William S. Potter, Charles H. Potter, Sarah K., wife of Edgar Adriance, Anna E. Potter, David M. Potter and Stephen S. Potter, share and share alike.

" Lastly, I hereby appoint my beloved wife, Elizabeth Potter, and my son, William S. Potter, my executors of this my last will and testament."

· The children mentioned in the will were all the children and heirs-at-law of the testator.   In 1879, the youngest child, Stephen S. Potter, became of age, and in 1881 the son, Charles H. Potter, died, leaving a widow and two infant children, to whom, by his will, he devised and bequeathed all his estate, real and personal, in equal shares.   The personal estate was sufficient to pay all the testator's debts.   It is now desired that the farm shall be sold, and the executors seek instruction, (a) whether they have power to sell the farm when they shall be directed to do so by a majority of the heirs; (b) who are intended by the words " the heirs," as those words are used in the will; (c) whether "the heirs" are to decide if the land shall be sold at public or private sale, and in whole or in part; (d) what the meaning of the word " terms " as used in the will is; and (e) whether they, in their capacities as executor and executrix, are charged with the duty of distributing the proceeds of the sale of the real estate.

The surviving children of the testator, and the husband or wife of each of them, and the widow and children of the deceased son, Charles H. Potter, are the defendants in the suit. They have all failed to answer, and the bill has been taken as confessed against all of them but the infant defendants, and, as well, its allegations have been established by proofs regularly taken.   The primary and most important question in this inquiry is, whether the contemplated sale of the farm is to be made by the executors.   In discussing this question, I must necessarily

Potter *v.* Adriance.

answer the other questions that the executors propound. As the executors are not expressly empowered to sell, authority must be found for them, if at all, by necessary implication from the language and scheme of the will. In *Lippincott* v. *Lippincott, 4 C. E. Gr. 121*, it is held that the appointment of one as executor of a will that directs lands to be sold, does not of itself confer on him the power to sell; but if the executor is directed by the will, or bound by law, to see to the application of the proceeds of sale, or if the proceeds, in the disposition of them, are mixed up and blended with the personalty, which it is the duty of the executor to dispose of and pay over, then a power of sale is conferred by implication. See, also, *Seeger* v. *Seeger, 6 C. E. Gr. 90 ; Louderbough* v. *Weart, 10 C. E. Gr. 399 ; Haggerty* v. *Lanterman, 3 Stew. Eq. 37*.

It was unquestionably the intention of the testator that his farm should be turned into money, and that that money should be divided between his widow and children in the proportions mentioned in the will. He provided for the postponement of the sale till his son Stephen should be twenty-one years old, and until a majority of his children should agree to it, and determine whether it should be by public auction or by private bargain, and whether the land should be sold in bulk or in parcels, and as to the terms of the sale, that is, the cash to be required at the time of the bargain, and at the time of conveyance, the limit of credit to be allowed, in money, time and security, the character of the vendees, the restrictions of the uses to which the lands sold shall be put and the like—and until such majority should direct the sale. He contemplated that it would take place during the lives of his wife and children. He did not devise the land.

This is not like the case of *Bentham* v. *Wiltshire, 4 Madd. 44*, because there the wife took an estate for life in the land which was to be sold after her death, and at the same time was one of the executors. That case turned upon the impossibility of holding that the testator could have intended that the wife should sell after her death. Nor is it like the case of *Geroe* v. *Winter, 1 Hal. Ch. 655*, for there the land was expressly devised to three children, the majority of whom were to determine whether it

should be divided among them or be sold, and there was no provision as to the disposition of the proceeds of the sale, if the land should be sold. In that case the court held that the devisees must all join in the sale, and that the executors could not sell.

The case in question is allied in principle to *Rankin* v. *Rankin, 36 Ill. 293,* where the direction was that the testator's farm should be disposed of to the best advantage, either in bulk or in lots, and that the proceeds should be divided into four shares which were to be distributed according to directions given in the will. There the court held that the testator contemplated the bequest of a fund distributable by the executors, to be produced by the sale of his farm, and that the executors had power to sell the real estate.

In the case under consideration the farm is to be sold, and the proceeds of sale are to be distributed, but the sale is not to take place till a majority of the testator's heirs, that is, his children, to whom the land would descend, shall determine upon its character and terms, and direct it. The executors are to perform the mere ministerial duties, that is, conduct the sale and distribute the proceeds, while the children, who are to have the beneficial interest (except the interest of the wife, who was given a place in the transaction as executrix), were to exercise the discretion and judgment which would be required.

By force of the word, "directing," which imports an order to another, this case is stronger, in favor of a power of sale in the executors, than *Rankin* v. *Rankin.*

I am of opinion that the executors will have the power to sell when a majority of the heirs, to whom the land has descended, shall exercise the discretion required of them by the will, and also that it will be the duty of the executors to distribute the proceeds of sale.