### HULETT *vs.* WHIPPLE and others.

A judgment creditor, who advances his money upon the faith of an unincumbered title upon the record, without notice, is entitled to the lien acquired thereby, in preference to the secret, unrecorded lien of the vendor, for a part of the purchase money.

Such a judgment creditor is to be regarded as a *quasi* purchaser for a valuable consideration, without notice.

The plaintiff, being the owner in fee of land, conveyed the same to C. by warranty deed, taking the promissory notes of the latter for a portion of the purchase money, payable at different times. At the time of taking such conveyance and executing the notes, C. promised the plaintiff, orally, that he would give him security therefor by bond and mortgage, or would give him security on the land. But no further or other security than the said notes was ever given. Subsequently, the defendants, without notice of any lien of the plaintiff for the purchase money, advanced their money to C. upon the faith and credit of the land and the apparent unincumbered record title thereto in him. The deed to C. was drawn by the plaintiff himself, who did not prepare any mortgage to be given, nor require or demand a mortgage as security. The plaintiff waited two years and nine months without making this equitable claim known to others, or making any demand for its enforcement; he received the amount due upon one of the notes, at maturity; and did not then demand a mortgage, nor did he ever make a demand for it, until he brought this action. *Held* that the conduct of the plaintiff amounted to a legal *waiver* of his right to an equitable lien upon the premises, for the purchase money, as against the lien of the defendants under their judgment.

THIS action was prosecuted by the plaintiff to foreclose an equitable mortgage for part of the purchase money claimed by him upon certain real estate situated in Clinton county, conveyed by him to one William Cressey, in 1865.

The defendants Whipple, Rousseau and Braman, alone defended. They defended under two judgments afterwards recovered by them against said Cressey, particularly under one recovered November 13, 1866, for $20,071.49, for actual advances at that time made by them to said Cressey, and then agreed to be made, and afterwards in fact made as upon the faith of said judgment and its lien

Hulett *v.* Whipple.

upon said real estate, without any notice or knowledge of the said claim of the plaintiff.

The action was tried before one of the justices of the fourth district, without a jury, and who found as facts therein, as follows :

1st. That on the 8th day of March, 1865, the plaintiff was the owner in fee of the lands and premises described in the complaint; and that on that day he conveyed the same (by warranty deed recorded March 20, 1865,) to the defendant William Cressey, as in the complaint stated; and thereupon and in consideration of such conveyance, said Cressey executed to the plaintiff three promissory notes for the sum, and sums, and payable as is also in the complaint averred; and further, that there remains due and unpaid on said notes, the amount in said notes specified.

2d. That at the time of said conveyance and the making and delivery of said notes, Cressey promised the plaintiff, orally, that he would give him security therefor, by bond and mortgage, at any time thereafter; or would, at any time thereafter, give him security on the land. But no further or other security than said notes was ever given by him; and the said notes, except the one which first fell due, and which was paid to the plaintiff, remained and still remains in the plaintiff's hands, and were produced by him at the trial.

3d. That said Cressey became and is insolvent, and was declared bankrupt, as in the complaint stated; and judgments were obtained and docketed against him, as is also averred in the complaint.

4th. That the two judgments in favor of the defendants, Whipple, Rousseau and Braman, against the defendant Cressey, the one for $25,095.68, the other for $20,071.49, docketed in Clinton county, the former on the 12th of December, 1865, the latter November 13, 1866, were duly entered upon confession according to law, and became

and were valid and binding judgments against said Cressey, and liens upon his property; and were given and confessed for the purposes and on the considerations stated in the answer of the defendants, Whipple, Rousseau and Braman, to the complaint herein; and said last named defendants thereupon made advances to said Cressey, as is averred in the said answer, on the faith of said judgments and of the lien and liens thereby created, in good faith, and without knowledge or notice that the purchase price of said land and premises had not been fully paid and satisfied to the plaintiff.

5th. That execution was issued upon each of said judgments, as stated in the said defendants' answer herein; and said lands and premises mentioned and described in the complaint (with other property of said Cressey) were sold thereunder, as is also therein averred, and the said defendants, Whipple, Rousseau and Braman, became the purchasers, and ultimately took the sheriff's deed therefor.

And as matter of law, the judge decided and adjudged, upon the pleadings herein and the facts above found and stated, that the defendants, Whipple, Rousseau and Braman, having made full advances to Cressey, on the credit of the lands and premises described in the complaint, and on the faith of their judgment liens, *bona fide*, without notice of the plaintiff's equity, were entitled to be protected in their legal title, formally and duly obtained by them, against the plaintiff's equitable claim for the balance of the purchase money remaining unpaid. That the said defendants' legal title should prevail over the plaintiff's equity. That the complaint should therefore be dismissed, with costs to the defendants, Whipple, Rousseau and Braman, against the plaintiff, and judgment was ordered and awarded accordingly.

From the judgment entered upon these findings the plaintiff appealed.

Hulett *v.* Whipple.

*J. Gay,* for the plaintiff.

*Beach & Smith,* for the defendants.

*By the Court,* POTTER, J. The case presents an exceedingly nice question in the law of equity, which, in some of its features, I think, has not been previously settled, in this State, by any adjudged case. Various cases having features in some respects similar, are found in the books of authority; and there are certain general principles of conceded authority that apply to all cases coming within certain rules, which require no labor to give them application. As for instance, it is a general doctrine of the law of equity, that the vendor of real estate holds an equitable lien, as against the *vendee,* for the unpaid purchase money; and this lien extends to the heirs and privies in estate of the vendee, and against subsequent purchasers with notice of the lien, and even against purchasers who advance no new consideration. It also extends against voluntary assignees, who are not regarded as being, within the meaning of the law of equity, *bona fide* purchasers; and as a general rule, it extends against *general* judgment creditors of the vendee; but, as was said in the Court of Appeals, in the case of *Fisk* v. *Potter,* (2 *Keyes,* 68,) its existence "is an anomaly in the law," (and it is so, especially in a State where the recording acts are declared to have force, and where parties may be presumed to act in reference to them.) "It is controlled by no well settled rules; but, on the contrary, the existence of the lien is generally made to depend upon the peculiar state of facts and circumstances surrounding the particular case." It is well settled that the lien does not exist against purchasers of the legal estate from the vendee without notice of the vendor's lien, for a valuable consideration, if they have advanced their money. (*Bayley* v. *Greenleaf,* 7 *Wheat.* 46. *Garson* v. *Green,* 1 *John. Ch.* 308, 309.) Nor can it be asserted against creditors of

the vendee, who hold under a *bona fide* conveyance from him. In *Bayley* v. *Greenleaf,* (*supra, p.* 51,) Chief Justice Marshall, in speaking of such a lien, said : "It is a secret, invisible trust, known only to the vendor and vendee, and to those to whom it may be communicated in fact. To the world, the vendee appears to hold the estate divested of any trust whatever, and credit is given to him, in the confidence that the property is his own, in equity, as well as law. *A vendor relying upon this lien, ought to reduce it to a mortgage, so as to give notice of it to the world.* If he does not, he is in some degree accessory to the fraud committed on the public by an act which exhibits the vendee as the complete owner of an estate on which he claims a secret lien. It would seem inconsistent with the principles of equity, and with the general spirit of our laws, that such a lien should be set up in a court of chancery, to the exclusion of *bona fide* creditors. The court would require cases in which this principle is *expressly decided,* before its correctness can be admitted."

In the light of this doctrine, let us examine the case before us. The learned judge finds that the facts set up in the answer of the defendants, other than Cressey, are true, which is, in effect, that the defendant Cressey applied to them for the advance of money to him, to assist him in business, and to be secured upon his real estate ; that upon the records of the clerk's office they found, upon search, that his real estate was free from incumbrance. Upon the faith of this as security, and without any knowledge of this secret claim of his grantor, they, in good faith, advanced the amount specified in the judgments which were given in evidence ; and which are due and unpaid. This presents, fairly, the question of equities between these parties.

Cases can be found, where it has been held that judgments given for an antecedent debt, must give way to the equitable lien upon *specific* property, upon the ground that

Hulett *v.* Whipple.

a judgment is a lien upon *all* real estate, and shall not be preferred to the specific lien upon one portion of it. So, too, English cases are found, in which the mortgagee, in in an equitable unrecorded mortgage, is preferred to general judgment creditors. *The Earl of Winchelsea's case,* reported in 1 *P. Wms.* 277, was where the earl entered into a contract for the sale of his estate, and received payment of a valuable consideration therefor by the vendee, but before conveyance, and while he was yet in possession, he confessed judgment to creditors. It was held that from the time the earl entered into this agreement, having received the consideration, he was but a trustee for the purchaser, and that the estate in equity belonged to the vendee, as against judgment creditors; but from the statement of the case, it is clearly to be implied that the judgments were for antecedent debts; for it was urged that the debts upon which the judgments were confessed were for debts upon which he had been trusted, and upon the ground that that he had been the apparent owner, and in possession of a large estate. But even this decision was made, as we are informed by *Fonblanque,* when the common law lawyers were pouring out their complaints against the encroachments of the court of chancery, in its attempts to control the judgments of inferior courts; and he adds, in a note, a quære, whether the judgment creditor in *Burgh v. Burgh,* and in *The Earl of Winchelsea's case,* had not also notice of the former equitable incumbrance. (1 *Fonb.* 35 *to* 37, *notes r. and u.*) And he says those are the only two cases to be found in the books, where a court has interfered in prejudice of a defendant having a legal interest without notice. The case, *Matter of Howe,* (1 *Paige,* 125,) is based upon these two English cases. This is the principal case relied upon by the plaintiff in the case at bar. The chancellor admits that he could find no case in this State, where this question had then been examined, (p. 128.) The chancellor also cited as authority to

sustain his opinion, *Sugden on Vendors;* but Chief Justice Marshall, in *Bayley* v. *Greenleaf*, questions the authority of *Sugden*, to the extent that it is given by the chancellor; and in the case cited from 2 *Serg. & Rawle*, the main question was, whether the purchaser by articles had a right to apply the purchase money agreed to be paid, to *existing* judgments against his vendor, and it was held that he had; but Chief Justice Tilghman, who delivered the opinion of the court, said: "I desire it may be distinctly understood, that no opinion. is intimated concerning the general effect of a judgment against the vendor *subsequent* to the articles of agreement for the sale of lands. It is a point of very great importance, upon which much property depends. The case must be decided upon its own circumstances." In the case of *Hurst* v. *Hurst*, cited also by the chancellor, from a note in 3 *Binney*, 347, Washington, J., cites a case from *Prec. in Chan.* 478, which lays down the principle, that a creditor advancing money upon the credit of a judgment, stands in a different situation from a *general* judgment creditor; since, he may, in equity, be considered as a *quasi purchaser or mortgagee.* All these English cases are uniform in holding that a *bona fide* purchaser, or mortgagee, holds a higher claim, in equity, than a mere secret equitable lien; and Chancellor Walworth adopts the principle, and says it is sound, that *bona fide* purchasers of the legal estate, and *mortgagees who have advanced their money on the credit of the land*, are to be considered as *bona fide* purchasers.

Now the points in the case before us are precisely these. The defendants, without knowledge of this secret, unrecorded lien, (if it be one,) advanced their money on the credit of the title and land of Cressey; the advances were made subsequent to the time when Cressey had the apparent unincumbered record title; and made upon the faith and credit of that title. Such is their claim. The plaintiff claims to hold a secret, equitable lien for a part of the

purchase money of the land conveyed to Cressey. He himself prepared the deed of conveyance, or caused it to be prepared, in advance of its execution; he did not prepare a mortgage to be given; nor, at the time of the delivery of the deed, the receipt of $1000, and the taking of notes for the balance, did he require or demand a mortgage as security. The deed, as the plaintiff says, was executed at his own house, between 10 and 12 o'clock at night; he consented then to take Cressey's notes, and let him go; he waited two years and nine months, with this equitable claim, without making it known to others, or making a demand for its enforcement; he received pay on one of the notes given for payment, when it became due, and did not *then* demand a mortgage; nor did he ever make a demand for it, until he brought this action.

This state of facts presents two questions of law: 1. Which has the higher equity, the creditor by judgment, who advances money upon the credit of an unincumbered record title, subsequent to the conveyance, and without notice of a secret trust, or equity; or, the grantor of the title, who permits his vendee to pass himself off to the world as the complete and absolute owner of the land, and by reason thereof, allows him to obtain confidence and credit from others, upon the faith that he was the absolute owner?

I can find no case, in this State, which has passed upon this as a distinct question. The case which lays down the rule which is the nearest approach to it, is the *Matter of Howe,* (*supra;*) but that does not at all decide this question; that was not a case, in its features, like this. The cases of *White* v. *Carpenter*, (2 *Paige*, 217,) and *Arnold* v. *Patrick*, (6 *id*. 315,) are relied upon also. Those cases only go to the extent that, as a general rule, the claim of a *general* judgment creditor is controlled by an equitable claim upon a specific portion of the lands of the debtor; and in none of those cases does it appear whether the

Hulett *v.* Whipple.

judgment debt was not for an old or antecedent debt. The only case I have found, which in all respects is like this case, is that cited by Washington, J., in *Hurst* v. *Hurst*, (3 *Binney*, 347,) from *Prec. in Chan.* 478, in which the distinction was made between a judgment creditor advancing his money, without notice, on the faith of a good title, and a *general* judgment creditor who did not so advance; the judgment of the former giving him the character of a purchaser in good faith in equity. Without access to this authority, otherwise, the principle strikes me as a sound doctrine of equity, and a well taken distinction. It comes within another well acknowledged principle of equity, that where one of two equally innocent parties must suffer, he by whose act, or negligence, the injury has been caused, must bear the loss. Here is great negligence, at least on the part of the plaintiff; there is diligence and good faith on the part of the defendants.

I think, upon the whole authorities cited, it may be laid down as a sound rule of equity, that a judgment creditor who advances his money upon the faith of unincumbered title upon the record, without notice, is entitled to the lien acquired thereby, in preference to the secret, unrecorded lien of the vendor for a part of the purchase money; that such judgment creditor is to be regarded as a *quasi* purchaser for a valuable consideration, without notice. The court below gave no opinion to inform us of the grounds upon which he based his judgment. Upon the ground we have pointed out, I think the judgment should be sustained.

2. Upon the whole circumstances of this case, I think the judgment can be sustained, on the ground of a legal *waiver* by the plaintiff to his right to his equitable lien, *as against bona fide judgment creditors who have advanced their money upon the faith of an unincumbered record title, subsequent to the title of the plaintiff.* The law upon this subject is very fully discussed, and had the approbation

of the Court of Appeals, as it appears reported in the case of *Fisk* v. *Potter,* (2 *Keyes,* 74, *&c.*) It will be only necessary to refer to that case, to establish the principle of *waiver* by the conduct of the party. That case seems to establish the law, that such equitable liens are controlled by no settled rules, (p. 68,) but are made to depend upon the peculiar state of facts and circumstances surrounding the particular case.

Looking at this case in view of its own circumstances, I think the conduct of the plaintiff amounted to a legal waiver of his claim *as against the defendant's lien.* If this was the ground upon which the learned judge decided the present case, I think the judgment can also be sustained on this ground. The result is, the judgment should be affirmed.

[THIRD DEPARTMENT, GENERAL TERM, at Ogdensburgh, November 1, 1870. *Miller*, P. J., and *Potter* and *Parker*, Justices.]