Charles L. Roane

*v.*

John H. Baker *et al.*

*Filed at Springfield March 23, 1887.*

1.　Conveyances—*acknowledgment of deed—whether essential.* In this State, a deed or mortgage is valid, as between the parties, without being acknowledged; and its execution may be proved by the testimony of any one who saw the same executed, or by the admissions of the grantor, or by any competent evidence.

2.　Same—*delivery—and of acknowledgment after delivery.* A delivery of a deed before its acknowledgment will be good in this State, and its acknowledgment some time after its date will not prove that it had not been executed and delivered before that time.

3.　To determine whether there has been a delivery of a deed or mortgage, it must appear, first, that the grantors intended to part with their title; and second, that the control of the instrument passed from the grantor to the grantee.

4.　The purchasers of a lot, at the time of the execution and delivery of the deed to them, on June 14, 1882, executed and left with the grantor their mortgage on the same property, securing the payment of a part of the purchase money, promising to get the wife of one of them to execute the same, which was not done until November 18, 1882, when the same was acknowl-

edged by the mortgagors and the wife: *Held*, that the mortgage took effect on the day of its date, when it was left with the mortgagee, and that the subsequent acknowledgment only furnished additional evidence of the execution and delivery of the mortgage which had already taken place.

5. PRIORITY OF LIEN — *as between a mortgage for purchase money, and a preëxisting judgment.* A mortgage given for the purchase money of land, executed at the same time the deed is executed to the mortgagor, takes precedence of a then existing judgment against the mortgagor, even though the mortgage may not be recorded for five months after its execution.

6. The owner of real estate sold the same under an agreement that a portion of the purchase price was to be secured by a mortgage on the lot. The lot was conveyed June 14, 1882, at which time the purchasers executed their mortgage on the property to secure the portion of the price as agreed upon, and it was handed to the mortgagee, but not being signed by the wife of one of the mortgagors, the mortgagee kept the same from the record, waiting for her signature, and the acknowledgment of the mortgage by the makers thereof. The deed was immediately recorded, but the mortgage was not recorded until November 20, 1882. On bill to foreclose the mortgage, a judgment creditor of one of the mortgagors, whose judgment had been recovered before the deed and mortgage were executed, sought, by cross-bill, in a suit to foreclose, to have his judgment lien on his debtor's interest first satisfied out of the property: *Held*, that the mortgage was entitled to precedence over the judgment creditor's lien; but that if the judgment creditor had purchased the property of his debtor, and paid for the same without notice of the mortgage, he would have taken precedence over the mortgage.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Moultrie county; the Hon. J. W. WILKIN, Judge, presiding.

Messrs. CREA & EWING, for the appellant.

Messrs. EDEN & CLARK, for the appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

On June 14, 1882, appellant sold to W. A. Short and Amos Short, for $2400, a store building and lot, twenty feet wide and ninety-two feet deep in Sullivan, Moultrie county, Illinois, and on that day made a deed conveying the property so sold. On the same day, a mortgage to secure $1900 of the purchase money was drawn by the same attorney, who drew the deed,

and was signed by W. A. and Amos Short. Amos Short seems not to have been a married man, but W. A. Short had a wife, named Eliza E. Short. The mortgage was given to secure purchase money, and, hence, it was not necessary for Mrs. Short to sign it, as she could have no dower in the premises, as against the mortgagee. Appellant, however, labored under the impression, that the signature of Mrs. Short was requisite to release her supposed dower, and, upon the statement being made to him, that she was sick and would be unable to acknowledge the instrument before a notary for several days, he placed the mortgage in the show-case in his store, and waited until she should sufficiently recover to be able to sign it. He and his wife acknowledged the deed on June 15, 1882, and he delivered it to W. A. Short upon the promise of the latter, that he would bring his wife in a few days to acknowledge the mortgage. When appellant so delivered the deed to W. A. Short, he, at the same time, received the mortgage, signed by W. A. and Amos Short. W. A. Short failed to keep his promise, and the mortgage was not signed by Mrs. Short, nor acknowledged by any of the makers until November 18, 1882, nor was it recorded until November 20, 1882. Appellant swears, that, after he had delivered the deed, he "asked W. A. Short at least a dozen times to have his wife come in and execute the mortgage." W. A. Short not only failed to keep the promise, which he had made to get possession of the deed, and thereby kept the mortgage from being recorded for a period of five months, but he proceeded almost immediately to place the deed on record, having recorded it on June 17, 1882.

On April 21, 1881, John H. Baker, one of the appellees, recovered a judgment for $590 and costs against W. A. Short and one Joseph G. Baker, the latter of whom was insolvent and left the State in the fall of 1881. Execution was issued upon this judgment on May 21, 1881, and returned unsatisfied on June 7, 1881. Appellee, Baker, claims that the lien of

his judgment against the undivided one-half of the property, owned by W. A. Short, is prior to that of the purchase money mortgage, held by appellant.

This suit was instituted by appellant, who filed his bill in the circuit court of Moultrie county against the Shorts, Baker and others to foreclose the mortgage, above described. The only allegation in the bill in reference to Baker's interest is the general one, that Baker and others "claim to have some interest in said premises, the nature of which is unknown to your orator, but whatever interest they have, the same is subject to the claim of your orator." Baker filed an answer to the bill, admitting that the notes, secured by the mortgage, were given for purchase money, but denying that the mortgage was executed and delivered on June 14, 1882, and alleging, "that said mortgage was executed on the 18th day of November, 1882, and not prior to that time," and was recorded on the 20th day of November, 1882. The answer sets up the judgment and execution, above named, and alleges that "his" (Baker's) "said claim is prior to the claim of complainant and should be first satisfied out of the interest therein of said W. A. Short." The answer further charges, that appellant is "not entitled to enforce a vendor's lien upon said land, because respondent alleges the fact to be, that said complainant, when he took said notes, did not rely upon a vendor's lien as security for the purchase money agreed to be paid, but he waived the lien as vendor, and accepted, as security for said purchase money, said E. E. Short and Elizabeth Short, both of whom, under the agreement of the parties, signed each and all of said notes as sureties, and afterwards, on, to-wit, the 18th day of November, 1882, said complainant took said mortgage as a further and additional security upon said notes."

Baker filed a cross-bill, asking that his answer "be taken and considered a part of his cross-bill," alleging "that his said claim is prior to that of complainant and should be

first satisfied out of the interest therein of W. A. Short,"
and praying that said interest be first sold and the proceeds
applied to the payment of said judgment. The decree recites,
that it was understood and agreed between defendants and
complainant in original bill, "that the issue be regarded as
joined upon the cross-bill filed herein."

In this State, a deed is valid, as between the parties to it,
without being acknowledged. (*Semple* v. *Miles*, 2 Scam. 315;
*McConnel* v. *Reed*, id. 371.) Such unacknowledged deed may
be proven by the testimony of any one, who saw its execution,
or by the admissions of the grantor therein; or by any com-
petent evidence. (*Dundy* v. *Chambers et al.* 23 Ill. 369.) The
signature of Mrs. E. E. Short to the mortgage in this case
being unnecessary either to pass dower or for any other pur-
pose, the mortgage was complete, as between the parties to
it, when signed by the two Shorts. It was so signed by them
and was by them delivered to and left with appellant, at
the same time at which appellant delivered to them the deed.
The mortgage and the deed are both dated on the same day.
Tiederman on Real Property, at section 812, says: "A de-
livery before the acknowledgment of probate will be good,
particularly in those States, where the acknowledgment is
not a requisite to the validity of the deed." In *Darst* v. *Bates
et al.* 51 Ill. 439, it is said of a trust deed, dated October 13,
1856: "It is true, that it was not acknowledged until the
30th of that month, but that does not prove, that it had not
been executed before that time." In *Walker* v. *Walker et al.*
42 Ill. 311, it was held, as to a deed, which had been signed
and acknowledged by both husband and wife, that the delivery
of the deed to the grantee therein was good, as against the
husband, so as to pass his title, but not good, as to the wife,
so as to pass her dower. It was, also, so held in *Burns and
wife* v. *Lynde*, 6 Allen, 305.

To determine whether there has been a delivery of a deed
or mortgage, it must appear, first, that the grantors *intended*

to part with their title, *second*, that the *control* of the instrument passed from the grantors to the grantee. (*Rivard* v. *Walker*, 39 Ill. 413; *Masterson* v. *Cheek*, 23 id. 72; *Bryan* v. *Wash*, 2 Gilm. 557.) In the case at bar, the Shorts parted with the control of the mortgage, which they had already signed, by leaving it with appellant, the mortgagee. That it was their intention to part with their own title is apparent not only from the fact, that they parted with the control of the mortgage, but from the fact, that they regarded the supposed dower of Mrs. Short, as being the only interest remaining to be vested in appellant. When they acknowledged the mortgage on November 18, 1882, they thereby added nothing to the execution of it; they merely furnished, by such acknowledgment, additional *evidence* of the execution, which had already taken place. We are, therefore, of the opinion, that the deed from appellant to the Shorts, and the mortgage for part of the purchase money from the Shorts to appellant, which are both dated on the same day, were both executed and delivered at the same time.

Although the apparent title, as shown by the record, was in W. A. Short from June 17 to November 20, yet the real title during that time, was in appellant, subject to be defeated by the payment of the mortgage.

The theory of the cross-bill is, that neither the real nor apparent title was in the purchaser until November 18. The cross-bill alleges, that the mortgage was not executed until November 18; as matter of fact, it was executed on June 14, or between that date and June 17. The cross-bill alleges, that, on November 18, appellant took the mortgage, as a further and additional security to the notes. The proof shows, that appellant accepted the mortgage to secure $1900 of the $2400, for which the property was sold, and agreed to accept one note for $500, signed by E. E. Short and Elizabeth Short, as sureties in lieu of the cash payment. He only desired the $500 note, not embraced in the mortgage, to be signed by

outside parties, as sureties. When, however, the notes were returned to him, they were all signed by the sureties, and so, he accepted them, as signed. The original intention was to have only one note secured by other names. As to the notes, named in the mortgage, the mortgage was relied on as the security, and the other signatures were accepted, because offered, but were not insisted upon. It, therefore, follows, that two very material allegations of the cross-bill, as to the date of the execution of the mortgage, and as to the mortgage being taken merely as an additional security to the notes, are not sustained by the proofs.

In *Curtis* v. *Root*, 20 Ill. 53, it is said: "It is a principle of law too familiar to justify a reference to the authorities, that a mortgage, given for the purchase money of land and executed at the same time the deed is executed to the mortgagor, takes precedence of a judgment against the mortgagor. The execution of the deed and of the mortgage being simultaneous acts, the title to the land does not for a single moment rest in the purchaser, but merely passes through his hands and vests in the mortgagee without stopping at all in the purchaser, and, during such instantaneous passage, the judgment lien can not attach to the title." It is true, that the judgment, which was affirmed in *Curtis* v. *Root*, 20 Ill. 53, was afterwards reversed in the same case, as reported in 28 Ill. 367 and 38 id. 192, upon other grounds, but the case in 20 Ill. still stands, as authority for the doctrine announced in the above quotation, where the deed and purchase money mortgage are executed at the same time. Freeman on Judgments, sec. 360, says: "A mortgage, trust deed or other instrument, given to secure the purchase money, takes precedence over a prior judgment lien against the vendee." *Dusenbury* v. *Hulbert*, 59 N. Y. 541.

If the doctrine, here laid down, only holds good, when the purchase money mortgage is recorded before the deed to the vendee is recorded, or at the same moment of time when such

·deed is recorded, it amounts to nothing more than a statement ·of what is true of any kind of a mortgage, whether given for purchase money or for any other consideration. In other words, it does not impart to a purchase money mortgage any ·element of superiority over a mortgage, which is not given for purchase money. And, if it be admitted that the doctrine in ·question is ever applicable in any case, where the recording ·of the deed precedes the recording of the mortgage by any period of time at all, what rule is to be laid down as to the length of time, that must elapse between the recording of the ·deed and the recording of the mortgage, before the lien of the judgment will be allowed to attach?

In *Elder* v. *Derby,* 98 Ill. 228, the purchase money mortgage was not recorded for several months after the recording ·of the deed to the vendee, and the question was whether the title of the vendee under the deed should inure to the benefit ·of the grantee in a former mortgage with covenants of warranty executed by such vendee, as against the purchase money mortgagee. It was there said: "If the recording laws are held operative in such a case as this, by what means could the owner sell and secure the purchase money by a mortgage, unless it was executed and recorded before the conveyance was made to the purchaser? Otherwise there must be a space of time between the execution of the conveyance and the recording of the mortgage, and no matter how short the period, the doctrine contended for would let in a prior mortgage, that was not a lien on the title thus sold and conveyed. Such a construction of the recording laws would render the sale of lands on time, with a mortgage executed back to the vendor, impracticable in many cases."

This proceeding is in a court of equity. The judgment creditor here, without being any worse off than he was before the title was put in W. A. Short, without having made any advance upon the strength of such title, without having even issued execution or made any levy, seeks the enforcement of

a purely legal and technical lien through a cross-bill, which prays for affirmative relief, against property which has not been paid for by its apparent owner. "It is true that" appellant "might have given a bond for a conveyance and thus have avoided all question as to priority of lien, but in equity should not this be considered as the same in 'substance? The vendor did not intend to release the land from a lien for the purchase money, and supposed by taking the mortgage he had effectually secured the lien, and, *in equity,* we think he did, and that it should be protected." *Elder* v. *Derby et al. supra.*

In *Stanley* v. *Valentine,* 79 Ill. 544, where a mortgagee executed a release to the mortgagor and placed it in the hands of a third party, to be delivered upon the performance of certain things to be done by the mortgagor, which the mortgagor never performed, and the release was never delivered to him, but, by accident or mistake, was placed upon record, it was held, that the judgment creditors acquired no rights by the recording of the release, and stress was laid upon the fact, that "the judgment creditors had advanced no money, given no credit, or done any act, by which they changed their attitude to the case."

Freeman in his work on Judgments, sec. 360, says: "While a judgment lien against a grantee is ordinarily subject to any lien in favor of the grantor for purchase money, whether recorded or not, yet an exception probably exists in favor of a judgment debtor (creditor,) who has *advanced money,* relying as security for his payment upon the apparently unincumbered title of the debtor in real estate." *Hulett* v. *Whipple,* 58 Barb. 224.

If appellee had purchased the property from Short and paid him money for it under the belief that Short was the real owner of the property, the apparent title to which was shown to be in him by the records, then his claim would have precedence over the mortgage of appellant. If appellee had advanced any money, or incurred any costs, or taken any

proceedings involving expense to himself, his rights would not be postponed to appellant's purchase money mortgage. But he obtained his judgment more than a year before the deed was made to W. A. and A. Short, and not only advanced no money and parted with no consideration by reason of the apparent title being in W. A. Short, but took no steps whatever towards the enforcement of his judgment, subsequently to June 17, 1882, until after the filing of this bill to foreclose.

We think, that under all the circumstances of this case, appellant's purchase money mortgage should have precedence over the lien of the judgment of appellee, Baker.

The judgments of the Appellate and circuit courts are reversed, and the cause is remanded to the circuit court for further proceedings in conformity with this opinion.

*Judgment reversed.*