Devin v. Eagleson.

---

·DEVIN *et al.* v. EAGLESON *et al.*

1. **Statute of Frauds :** AGREEMENT TO MORTGAGE LAND FOR PURCHASE MONEY : VENDOR'S LIEN. Where land had been purchased and partly paid for, and had passed into the possession of the purchaser, under an agreement that he would. as soon as possible, execute a mortgage thereon to the vendor to secure the residue of the purchase price, the agreement to execute the mortgage is excepted from the statute of frauds by section 3665 of the Code.

Devin v. Eagleson.

2. **Vendor's Lien:** AGREEMENT TO EXECUTE MORTGAGE. Where a purchaser of land paid a part of the price and took possession, and agreed to execute a mortgage for the residue, and the mortgage which was prepared, and which he was to execute, but which he never did execute, provided that he should keep the taxes paid, and he failed to pay them, and the vendor paid them to preserve his security, *held* that the vendor had a lien, according to the terms of the prepared mortgage, not only for the residue of the purchase price, but also for the taxes paid by him.

3. ——: ——: JUDGMENT CREDITORS: PRIORITY. In such case, where merchants extended credit to the purchaser after the purchase, but before his deed was recorded, but they did so not knowing of nor relying upon his purchase of the land, and, after the deed was recorded, they procured a judgment against him, which became a lien on the land, *held* that such lien was inferior to the vendor's lien, for purchase money and taxes.

4. ——: ——: EXTINGUISHMENT BY VENDEE'S INSOLVENCY AND ASSIGNMENT. The vendor's lien in such case, not being a mere equity, but based upon a contract which a court of equity will enforce, is not extinguished by the insolvency of the vendee, and his assignment. Code, section 1940, which provides that no vendor's lien for unpaid purchase money shall be valid after a conveyance by the vendee, unless reserved by a proper instrument in writing, duly acknowledged and recorded, does not apply to a lien thus created by contract. (See opinion for citations.)

5. **Bankruptcy:** ENFORCING LIEN AGAINST BANKRUPT'S PROPERTY: LIMITATION. Section 5057 of the Revised Statutes of the United States, providing that no suit shall be maintained in any court between the assignee in bankruptcy and the person claiming an adverse interest, touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee, does not apply to an action between a vendor to the bankrupt and a judgment creditor, involving the priority of their liens, both of which antedated the assignment, and where the property in question had, by order of court, been conveyed by the assignee to the vendor in satisfaction of his demand.

6. **Equity:** RELIEF: LACHES. A party in possession of land cannot be charged with laches in neglecting to bring an action to establish his rights therein, so long as those rights are not questioned.

*Appeal from Greene District Court.*—HON. J. P. CONNER, Judge.

FILED, FEBRUARY 1, 1890.

ON August 24, 1877, the plaintiff Devin was the owner of lot number 177, block 23, in the town of Jefferson, Greene county, Iowa, and on that day he conveyed the same to the defendant J. A. Thompson, in pursuance of a verbal agreement by which Thompson was to pay twelve hundred dollars for the lot, one hundred dollars of which he then paid in cash, and for the balance executed and delivered to Devin his seven promissory notes. The first three notes falling due, and the interest on the others up to January 1, 1878, were paid by Thompson; leaving four notes, of two hundred dollars each, with interest at ten per cent., due, respectively, January 1, 1879, 1880, 1881 and 1882, unpaid. In each of the notes was written : "This note is given in part payment for, and secured by a mortgage on, lot number 177, in Jefferson, Iowa." The deed to Thompson was recorded March 13, 1878. On July 19, 1878, Thompson confessed judgment in favor of defendants T. W. Barhydt & Co., in the district court of Guthrie county, Iowa,. on account for merchandise, for $359.55, a transcript of which judgment was filed in the office of the clerk of Greene county, July 20, 1878. The bills of merchandise in the account upon which judgment was rendered were delivered in August and November, 1877. In July, 1886, an execution was issued on said judgment, and placed in the hands of the defendant Eagleson, sheriff of Greene county, who levied the same upon said lot, and was proceeding to sell the lot under said execution, until enjoined in this action. In September, 1878, Thompson was, upon his own petition, adjudged a bankrupt, and Dan Brown appointed assignee. The assignee filed his petition in the United States district court, alleging that Thompson held said lot subject to a mortgage lien for the full value thereof, and that the holder, desiring to quiet his title and secure possession, was willing to release the estate, and to purchase the interest of Thompson in the lot, for the debt due. On April 4, 1883, that court ordered the assignee to convey the interest of Thompson in the

lot to Devin, on said terms; and on April 6, 1883, the assignee executed a conveyance accordingly to Devin, and Devin surrendered to him said unpaid notes. Thereafter the plaintiff sold and conveyed said lot for full value to the plaintiff Albert Head. The plaintiff Devin claims that, as a part of the oral agreement under which he conveyed said lot to Thompson, and received the one hundred dollars in cash and the seven promissory notes, Thompson promised and agreed that he and his wife would execute to Devin a mortgage on said lot to secure the seven promissory notes, and when executed he would send the same to Mahlon Head, who, as agent for Devin, was to receive and file the same for record, and that a mortgage, ready for execution, was then given to said Thompson, to be executed and sent to Mahlon Head, as agreed upon. Thompson and the other defendants deny that there was any agreement to give a mortgage on said lot to secure said notes. Decree was entered in the district court, finding and establishing the lien of plaintiff Devin for twenty-one hundred and sixteen dollars, with ten per cent. interest from date of decree, and for $133.12 taxes paid, with six per cent. interest from date of decree, and declaring the same to be superior and paramount to the lien of the defendants Barhydt & Co. It was ordered and adjudged that the plaintiff Albert Head be subrogated to all the rights and equities of his co-plaintiff G. W. Devin; that the injunction be dissolved; that the defendants Barhydt & Co., may, if they so elect, cause said lot to be sold under their judgment against Thompson; the sale to be subject to said lien in favor of plaintiffs for said amount found due. The defendants Eagleson and Barhydt & Co. appeal.

*H. E. Long,* for appellants.

*Russell & Toliver* and *Mitchell & Dudley,* for appellees.

GIVEN, J.—I.   Our first inquiry is whether at the time of the sale, and as a part thereof, it was agreed that Thompson should execute to Devin a mortgage on the lot to secure the seven promissory notes.   We are entirely convinced that such was the agreement.   Devin, Mahlon Head and Albert Head each so testified, and they are corroborated by the facts that Devin and Thompson were strangers; that Devin had been informed by Mahlon Head that he did not understand that Thompson was worth a great deal of money; that credit was extended for the greater part of the purchase price, and on long time; and that Thompson was in possession of the very mortgage which Devin says he filled out and gave to him to be executed and sent to Mahlon Head for record.   The language of the notes indicates such an agreement.   The unsupported denial of Thompson cannot prevail against this weight of testimony.

II.   Appellants contend that, as a mortgage on real estate is an instrument affecting the title thereof, or conveying an interest therein, it must be in writing, and, if not, that it comes within the statute of frauds, and cannot be proved, and hence that an agreement for such a mortgage, unless in writing, comes within the statute, and is invalid.   The general provision of the statute is that no evidence of contracts for the creation or transfer of any interest in lands, except leases for a term not exceeding one year, is competent, unless it be in writing, and signed by the party charged, or by his lawfully authorized agent.   To this general provision there is the exception that it shall not "apply where the purchase money, or any portion thereof, has been received by the vendor, or when the vendee, with the actual or implied consent of the vendor, has taken and held possession thereof under and by virtue of the contract, or when there is any other circumstance, which, by the law heretofore in force, could have

1. STATUTE of frauds: agreement to mortgage land for purchase money: vendor's lien.

taken the case out of the statute of frauds." Code, secs. 3663–3665. Clearly, the consideration for which Thompson was to give the mortgage had been received by him. There was such a part performance of the agreement as takes it out of the statute of frauds, and renders it enforceable by courts of equity.

III. "The term 'purchase money,' as used in this statute, means the consideration." *Devin v.*

**2. VENDOR'S lien: agreement to execute mortgage.** *Himer*, 29 Iowa, 298. The consideration for Thompson's promise to give a mortgage was the sale and conveyance of the lot to him, which consideration he fully received.

That such a part performance will take the case out of the statute of frauds is so well established as not to require citation of authorities. It would · be grossly inequitable to leave Thompson to enjoy the fruits of the oral agreement, and deny to Devin what was promised to him in consideration therefor. The numerous authorities cited by counsel for appellants, relating to equitable mortgages by deposit of title deeds, are not applicable to a case where there has been an oral agreement to give a mortgage, that has been so far performed as to bring the case within the exception to the general statute. The agreement was to execute the mortgage prepared by Devin, in which it is provided that Thompson shall pay accruing taxes. This he failed to do, and Devin paid them to preserve his security. We are clearly of the opinion that, as between Devin and Thompson, Devin is entitled to a lien, according to the terms of the mortgage prepared, and which Thompson agreed to execute, for the unpaid purchase money and interest, and for the taxes paid by Devin on the lot.

IV. It is contended, on behalf of appellants Barhydt & Co., that, though such a lien may exist as

**3. ——:——: judgment creditors: priority.** between Thompson and Devin, it is of no validity as to them; they having extended credit to Thompson on the faith of his property, and without any knowledge of such a lien. It is unquestionably true that they had no

knowledge of this lien at the time they gave credit to Thompson, and we think it also true that they did not then know that Thompson had or claimed any interest in the lot in question. Both members of the firm were witnesses, and neither testified to having any knowledge of this lot, or that Thompson had any interest in it at the time they gave credit to him. The deed to Thompson was not filed for record until long after the date of the last item in the account upon which judgment was confessed. It is evident that they did not extend that credit to Thompson because of any interest he had in the lot.

The case of *Hulett v. Whipple*, 58 Barb. 224, relied upon by appellants, is identical with this in many of its facts, yet differing in several important particulars. In that case, at the time of the conveyance and delivery of the notes, the purchaser promised that he would give security "at any time thereafter, or would at any time thereafter give him security on the land;" thus leaving it with the vendor to demand security when he desired it. No demand was made, and hence the vendor was held to have waived the security. In this case, the security was to be given as soon as Thompson could go to his home, and have his wife join in the mortgage. There was nothing remaining for Devin to do to entitle him to the mortgage. In that case, as in this, defendants, without knowledge of the unrecorded lien, gave credit, but, unlike this, did so after an examination of the records, and upon the faith of the vendee's apparent, unincumbered, record title. In that case, as in this, the vendor prepared the deed, but he did not prepare a mortgage to be given, as Devin did; in that, the vendor received the money and notes without requiring or demanding a mortgage,—"he consented to take Cressey's notes, and let him go." With no right to expect a mortgage until demanded, he waited two years and nine months without making his claim known. Devin waited, supposing his mortgage had been executed, and sent to Mr. Head, and was upon

record. The court says in that case: "It may be laid down as a sound rule of equity that a judgment creditor who advances his money on the faith of unincumbered title upon the record, without notice, is entitled to the lien acquired thereby, in preference to the secret unrecorded lien of the vendor for a part of the purchase money." This case is not within that rule, because credit was not given to Thompson upon the faith of his title.

V. Appellants contend that, at most, Devin has but a mere vendor's lien, and that this became extinguished by the conveyance from Thompson to Brown, assignee, under the provisions of section 1940, Code, which provides that "no vendor's lien for unpaid purchase money shall be recognized or enforced, in any court of law or equity, after a conveyance by the vendee, unless such lien is reserved by conveyance, mortgage or other instrument, duly acknowledged and recorded." It was held in *Prouty v. Clark*, 73 Iowa, 55, that an assignment by an insolvent was a conveyance, within the meaning of this section. In *Porter v. City of Dubuque*, 20 Iowa, 442, it is said: "The right to a lien in favor of a vendor upon the real estate sold to a vendee is not based upon contract, nor is it properly an equitable mortgage; neither can it be regarded as a trust resulting to the vendor by reason of the vendee holding the estate with the purchase money unpaid. It is a simple equity, raised and administered by courts of chancery." Devin's lien is not such a lien. It is not a simple equity, but a lien based upon a contract,—a contract, as we have seen, such as courts of equity will enforce. Hence section 1940 does not apply. The assignee takes the property of his assignor subject to all the equities existing against it in favor of third parties. He stands in the shoes, and succeeds only to the rights, of the assignor. *Roberts v. Corbin*, 26 Iowa, 316. Counsel claim, on the authority of *Cutler v. Ammon*, 65 Iowa, 281, that defendants' judgment is entitled to priority.

*4. —: —: extinguishment by vendor's insolvency and assignment.*

It was held in that case that the lien of a judgment takes precedence of a prior vendor's lien, but it does not hold that the judgment would take precedence over a lien created by contract.

VI.   It is provided in section 5057, Revised Statutes, United States, that no suit shall be maintained in

5. BANKRUPTCY: enforcing lien against bankrupt's property: limitation.

any court between the assignee in bankruptcy and the person claiming an adverse interest, touching any property or rights of property, transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee. Appellants contend that the plaintiff Devin's cause of action accrued when the first note fell due, January 1, 1879, and that, as defendants' action was not brought within two years thereafter, nor within two years after the last note fell due, January 1, 1882, the action is barred. *Goodnow v. Oakley*, 66 Iowa, 658, is relied upon. That was an action against the assignee to recover for taxes paid upon lands owned by the bankrupt, and to have the same declared a lien upon the land. Subsequent to the bringing of the action, the assignee conveyed the land to other persons, who, by proper amendments to the petition, were made defendants. It was held that the plaintiff came within the express language of the provision, as one claiming an adverse interest touching property, or rights of property, vested in such assignee. This case is distinguishable from that, in the fact that this conveyance was to the plaintiff, and that the assignee is not a party to this action. While it is true that, in a certain event, relief is asked against Thompson and wife, yet it is not a case wherein plaintiff is claiming an interest adverse to the assignee, touching property or rights of property vested in him. The real controversy is between Devin and Barhydt & Co., and not within the statute cited. We find nothing in any of the cases referred to in conflict with this view.

VII.   Appellants' further contention is that plaintiffs are estopped by their laches from asserting their

6. EQUITY:      lien. Having consummated his lien by
relief: laches. securing the conveyance of the assignee,
there was no cause for action upon the part of Devin
until he was disturbed by Barhydt & Co.'s execution,
and, when this occurred, this action was brought. He
is guilty of no laches.

VIII. It is also contended by appellants that
Devin cannot recover taxes, because there was no agree-
ment in writing entitling him to recover the same. The
mortgage which Thompson agreed to and should have
executed provides for the payment of taxes. Hence
Devin's right to a lien for unpaid purchase money
covers the taxes. Our conclusion is that the decree of
the district court is right, and should in all respects be

AFFIRMED.