(No. 2590—)

ANGELINE GOODMAN, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 15, 1937.*
*Rehearing denied May 10, 1939.*

LYLE K. WHEADON, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

Mr. Chief Justice Hollerich delivered the opinion of the court:

On February 5th, 1935 Angeline Goodman, then eighty-two years of age, filed her complaint herein for the recovery of damages which she claimed resulted to her property by reason of the construction of S. B. I. Route No. 95. On De-

cember 15th, 1936 Angeline Goodman departed this life testate, and letters testamentary on her estate were duly issued to Edith Nolan by the County Court of Fulton County, and thereafter, on motion duly made, said executrix was substituted as claimant herein.

The property claimed to have been damaged is situated in the eastern portion of Lewiston, in Fulton County; consists of approximately four acres, having a frontage of about two hundred yards on the south side of S. B. I. Route No. 95, and is improved by a five-room bungalow which is situated on the northwest corner of the property. S. B. I. Route 95 extends in an easterly direction from the City of Lewiston, and prior to the time it became a part of the hard road system of this State, was a dirt road and was known as Avenue E.

The Goodman property is located at the crest of a hill, and the highest point of said property is directly in front of the house. The dirt road had previously been excavated to such an extent that the surface thereof was approximately fourteen feet below the crest of the hill. Before the construction of the hard road the occupants of said property had access thereto by means of a road which extended in a southerly direction from Avenue E just west of the house.

In the work of the construction of such hard road, a further excavation was made, and the crest of the property in question is now approximately twenty feet above the surface of said roadway. The cut was so deep that the private roadway just west of the house had to be abandoned, and the State constructed another entrance to the property, approximately two hundred fifty feet east of the house, extending in a southerly and southeasterly direction to the rear of the house. Prior to the construction of the hard road, the occupants of such property had mail delivery from the local postoffice, but after the construction of such road, mail delivery was abandoned by the postoffice authorities on account of the inaccessability of the property.

Claimant contends that by reason of the construction of the hard road, the property has been materially damaged by reason of interference with the means of ingress and egress, by erosion, loss of free mail delivery, and the destruction of several trees.

Prior to the time the hard road was constructed, another location therefor was under consideration by the highway

department. The public-spirited citizens of Lewiston were anxious to have the road laid out on Avenue E, and at a mass meeting of property owners held in the court house, a committee of local men was selected for the purpose of obtaining the necessary rights-of-way and releases of damages from abutting property owners. On account of her advanced age, Mrs. Goodman did not personally look after her interests in connection with the construction of the roadway, but was represented by her son-in-law, John Thorn.

The contour of the ground on the Goodman property slopes abruptly to the north, and on account of the depth of the cut, and the resulting slope of the embankment, it became necessary to acquire additional right-of-way in front of the Goodman residence.

Before the work of construction was commenced, Angeline Goodman signed a deed of dedication of right-of-way for public road purposes, conveying the additional land required by the respondent as aforesaid, and also signed a release of all damages of every kind and nature which might be occasioned to her said property by reason of the construction and maintenance of said S. B. I. Route 95. Both instruments were in the form prepared by the highway department, were under seal, and signed by Angeline Goodman by her mark, and were witnessed by her son-in-law, John Thorn.

The Attorney General contends that the plaintiff is not entitled to. an award on account of the fact that any damages she may have sustained are barred or released by the deed of dedication and the release agreement executed by her as hereinbefore set forth.

In answer to such contention, the claimant says that after said contract and release of damages had been signed, the plans were either changed, or the cut in front of the Goodman property was made to a greater depth than was provided in such plans, and that therefore the said deed and release do not bar the claimant from an award.

Claimant's right of recovery is based upon the following:

1. The property in question was damaged as the result of the carelessness and negligence of the representatives of the State connected with the highway department.

2. On the grounds of equity and good conscience.

3. Upon the constitutional provisions that private property shall not be taken or damaged for public use without just compensation.

These contentions will be considered in the order above set forth:

1. This court has repeatedly held that in the construction of its hard-surfaced roads, the State is engaged in a governmental function. *Goldie Ryan* vs. *State,* 8 C. C. R. 361; *Elsie Baumgart* vs. *State,* 8 C. C. R. 220; *Chumbler* vs. *State,* 6 C. C. R. 138; *Bucholz* vs. *State,* 7 C. C. R. 241; *Braun* vs. *State,* 6 C. C. R. 104; *Loges* vs. *State,* 8 C. C. R. 53; *Johnson* vs. *State,* 8 C. C. R. 67; *Trompeter* vs. *State,* 8 C. C. R. 141; *Lester Royal* vs. *State,* decided at the September 1935 term of this court.

Our Supreme Court has consistently held that the State, as well as counties and other political subdivisions of the State, in the exercise of their governmental functions, are not liable for the negligence of their servants and agents, in the absence of a statute making them so liable. *Minear* vs. *State Board of Agriculture,* 259 Ill. 549; *Hollenbeck* vs. *County of Winnebago,* 95 Ill. 148; *City of Chicago* vs. *Williams,* 182 Ill. 135; *Gebhardt* vs. *Village of LaGrange Park,* 354 Ill. 234.

2. The question of the liability of the State on the grounds of equity and good conscience alone was fully considered by this court in the case of *Crabtree* vs. *State,* 7 C. C. R. 207, where, after reviewing the previous authorities on the subject, we held that this court has no jurisdiction to allow an award in any case unless there would be a legal liability on the part of the State, if the State were suable. The decision in the Crabtree case has been approved by this court in so many cases since that time that the citation thereof is superfluous.

3. Under the provisions of Section 13 of Article 2 of the constitution, however, if private property is taken or damaged by the State for public use, the property owner is entitled to be compensated therefor, and in this case the claimant is entitled to an award unless the right thereto has been barred by the aforementioned deed of dedication and the aforementioned release of damages.

D. M. Costello, State Highway Engineer, engineer of design for the district in question, testified that although there had been some change made in the plans during the design of the road, yet when the final plans were prepared, no change was thereafter made therein, and that such plans as finally prepared, were the plans which were presented to the local

committee which was in charge of securing the rights-of-way and release of damages. The testimony for the respondent also showed that there was no change in the grades or alignment in front of the Goodman property during the work of construction, and that the road was graded exactly according to the plans.

The witnesses for the claimant did not agree among themselves in their understanding of what the plans provided. This probably arose from the fact that the several members of the Citizens Committee were not all present at the various meetings with the representatives of the highway department, some being present at one time and some at another. However, one question upon which they seemed to agree was that the cut in front of the Goodman property as actually made, was greater than they anticipated it would be. Mr. Groat, a member of the Citizens Committee, testified that he was under the impression that the cut was to be about eight feet. Mr. J. T. Holmes, another member of the committee, testified that he was under the impression that the cut was to be about six or seven feet; Mr. Fouts, another member of the committee, testified that his idea was that the cut was to be about four to six feet. Mr. Dobson, another member of the committee, testified that his idea was that the cut was to be about three to four feet. As a matter of fact, the cut as actually made at the deepest point, was approximately seven feet; that is to say, no greater than two of the members of the committee understood it was to be, although it afterwards appeared to them to be considerably deeper.

No one connected with the State Highway Department talked to Mrs. Goodman regarding this matter, or made any representations to her, and consequently if she was misinformed regarding the provisions of the plans, it must have been by some member or members of the Citizens Committee. It may be that the members of the committee did not properly understand the plans, and apparently the cut when completed was deeper than they anticipated it would be, but nevertheless, the weight of the evidence indicates that there was no change in the final plans for the work, and that the improvement was constructed and completed strictly in accordance with the final plans which were prepared and presented to the Citizens Committee prior to the execution of the deed of dedication and release of damages by Mrs. Goodman.

The deed of dedication and release in question were offered in evidence by the respondent, and if they were not binding upon the claimant by reason of any misrepresentations made to Mrs. Goodman, or if the improvement was not constructed in accordance with such plans, the burden was upon the claimant to establish such facts.

From a careful reading of all of the evidence, we are of the opinion that the claimant has failed to establish either of such propositions, and that therefore the claimant is bound by such deed and release of damages.

The release in question was objected to by the claimant for the reason that the same was not dated. It appears, however, that same was acknowledged before a Notary Public on August 13th, 1932. The grantor Angeline Goodman apparently signed by her mark, which was witnessed by her son-in-law, John Thorn. Under the evidence in the record, the release was properly admitted.

This court has heretofore held that where there is a deed of dedication, the legal effect of such deed is the same as a judgment in condemnation; that the consideration for the conveyance constitutes a release of all damages, including damages to property not conveyed, which results from the proper construction of the road in question. *Fred Baber* vs. *State,* No. 2221, decided at the November 1935 term of this court; *Lampp* vs. *State,* 6 C. C. R. 349.

This holding is in accordance with the decisions of our Supreme Court. *C. R. I. & P. Ry. Co.* vs. *Smith,* 111 Ill. 363; *Atterbury* vs. *C. I. & St. L. Ry. Co.,* 134 Ill. App. 330. See also 2 Lewis Eminent Domain, 2d Edition, page 702, Section 293.

Under the provisions of such release, said Angeline Goodman, for herself, her heirs, executors, administrators and assigns, forever released the respondent from all damages of every nature and description that might be occasioned upon or to the Goodman property by reason of the construction and maintenance of said S. B. I. Route 95. Under the terms of such release, the claimant is barred from any right to an award by this court.

Award denied. Case dismissed.

SUPPLEMENTAL OPINION ON PETITION FOR REHEARING.

*Per Curiam:*

This cause again comes before the court upon claimant's petition for rehearing, in which she sets forth eleven par-

ticulars wherein the court is alleged to have erred.

The first, second, fifth, eighth and eleventh grounds for rehearing are to the effect that the court failed to give adequate consideration to the testimony of certain witnesses for the claimant.

The third ground is based upon the statement that since the claimant's case was closed, new evidence had been discovered, to wit, the testimony of the physician in charge of said Angeline Goodman at the time the deed of dedication and release in question were signed by her, to the effect that said Angeline Goodman was then so ill and bedfast to such an extent that she could have had no knowledge of such instruments or the purport thereof.

The fourth ground consists of an offer to show that no one ever had any power of attorney or authority to act for said Angeline Goodman, and that the dedication and release in question were never personally notarized in the presence of the claimant, nor did the Notary Public ever personally take her acknowledgment.

The seventh and tenth grounds are that the acknowledgments of the deed of dedication and the release were false and fictitious; that said Angeline Goodman never appeared before the Notary Public, nor he before her; and that such deed and release were improperly admitted in evidence over claimant's objection, without proof of the execution thereof.

The sixth ground is as follows:

"That the law is clear that where the grade and alignment of a road is changed compensation should be paid."

The ninth ground is that the claimant is entitled to an award on the grounds of social justice and equity.

All of the testimony in the record was carefully considered by the court upon the original hearing, and upon a further consideration thereof, the court fails to find therein anything which would cause it to alter its previous opinion as to the probative effect of the testimony of the several witnesses.

The matter of the mental condition of Angeline Goodman at the time of the execution of the deed and release in question, was first suggested by the claimant in her petition for rehearing, which was filed herein more than five years after the execution of such instruments, and almost a year after the death of said Angeline Goodman.

The deed of dedication was dated and acknowledged on August 13th, 1932; the release was not dated but was acknowledged on August 13th, 1932; both documents were recorded in the office of the Recorder of Deeds of Fulton County, Illinois on August 27th, 1932; Angeline Goodman filed her claim herein on February 5th, 1935; the taking of testimony was concluded on September 30th, 1935; Angeline Goodman died on December 15th, 1936; claimant's Brief and Argument was filed on September 12th, 1936; respondent's Brief and Argument was filed on June 1st, 1937; and claimant's petition for rehearing was filed on October 15th, 1937.

It is well settled in this State that an application for new trial on the ground of newly discovered evidence is not looked upon with favor, and should always be subjected to the closest scrutiny; also that a motion for new trial on the ground of newly discovered evidence should not be granted where the newly discovered evidence could have been discovered before the trial, by the exercise of due diligence. *People* vs. *Buzan,* 351 Ill. 610; *Graham* vs. *Hagman,* 270 Ill. 252-261; *Metz* vs. *Yellow Cab Co.,* 248 Ill. App. 609; *Miller* vs. *Miller,* 315 Ill. 600; *Nesbit* vs. *Streck,* 259 Ill. App. 48; *People ex rel Oemke* vs. *Schuring,* 288 Ill. App. 451.

No facts are alleged from which it appears that the newly discovered evidence could not have been discovered before the trial, and no reason is suggested why such evidence was not produced at that time; consequently, on the showing made, claimant is not entitled to a rehearing on account of any newly discovered evidence.

The same rule applies to the offer to show that no one had a power of attorney, or authority to act for Angeline Goodman; that the instruments in question were not personally notarized, and that the notary did not personally take the acknowledgments. Furthermore, even if such instruments had not been notarized at all, in the absence of any other showing, they would still be good and valid as between the parties. *McNichols* vs. *McNichols,* 299 Ill. 362-368; *Callaghan* vs. *Callaghan,* 359 Ill. 52-59; *Doane* vs. *Baker,* 120 Ill. 308.

Upon the original hearing on July 2d, 1935, the documents in question were offered in evidence and the following objection was made to their admission, to wit:

"Enter the objection of the claimant to the offer of the exhibits on the ground that such are incompetent, not properly notarized, and no one

familiar with the signing of same has proven the signatures either of the notary or the party thereto, and that there is no proof by the witnesses to the mark of the claimant regarding same. One more objection that the respondent's exhibit No. 2 (the release) is not dated as to time of signing."

Both documents purported to be signed by Angeline Goodman by her mark; both were properly witnessed; both were in regular form and duly acknowledged, and no suggestion was made at the time they were offered in evidence that said Angeline Goodman did not sign the same, or that she was not of sufficient mental capacity to execute the same.

There is no basis in law for the claim which was made on the trial and which is now made, to the effect that the documents were not admissible in evidence without proof of the execution thereof by Angeline Goodman. The statute provides (Ill. Rev. Stat. 1937, chap. 30, sec. 35):

"Every deed, mortgage, power of attorney, conveyance, or other writing, of or concerning any lands, tenements, or hereditaments which, by virtue of this Act, shall be required or entitled to be recorded as aforesaid, being acknowledged or approved according to the provisions of this Act, whether the same be recorded or not, may be read in evidence without any further proof of the execution thereof"; etc.

Claimant seems to take the position that the release in question is not a ''deed'' and therefore not entitled to be recorded under the foregoing provisions. Such a construction is not warranted by the decisions. The term ''deeds'' is not limited to deeds of conveyance, but includes all instruments under seal. 2 Words and Phrases, page 1920; 18 Corpus Juris 146; 1 Pope's Legal Definitions, 356, and cases there cited.

On the original hearing there was no denial of the execution of either of the instruments; they purported to be properly signed and acknowledged, and were therefore properly admitted in evidence.

The sixth ground relied upon is a general statement, which, under the facts in the record, is entirely without merit.

The right of the claimant to recover on the grounds of social justice and equity was fully considered on the original hearing.

There is nothing in the petition for rehearing which entitled the claimant to the further consideration of the case by the court, and nothing which would cause the court to change the views expressed in its original opinion;—consequently the petition for rehearing is denied.