178   46
178  130
178    46
93a  5542

B. H. STOFF *et al.*

*v.*

FELIX McGINN *et al.*

*Opinion filed February 17, 1899.*

1. EQUITY—*when administrator may ask for construction of will.* An administrator with the will annexed, under which the executor was required to convert land into money and make distribution, is so connected with the trust that he may apply to equity for a construction of the will and the appointment of a trustee to sell.

2. JUDGMENTS AND DECREES—*decree not open to collateral attack because the complainant was not entitled to sue.* The decree of a court of equity, having jurisdiction of the parties and subject matter, can not be collaterally attacked upon the ground that the complainant was not entitled to bring the suit.

3. SAME—*decree cannot be collaterally attacked for mere irregularities.* Parties to a decree directing the appointment of a trustee to sell land and make distribution cannot attack the decree collaterally for failure of the trustee to give bond or for want of confirmation of the sales by the court.

4. RES JUDICATA—*parties to suit are bound by decree while in force.* Parties to a decree construing a will, rendered by a court having jurisdiction of the parties and subject matter, which decree finds that the real estate is to be regarded as personal property and directs the appointment of a trustee to sell and distribute, cannot, while the decree remains in force, though unexecuted, have partition or recover the property as real estate in any form of action.

5. WILLS—*power of sale may arise by implication.* A power of sale by an executor arises by implication, where the executor's duties under the will cannot be performed without making a sale.

APPEAL from the Circuit Court of Clinton county; the Hon. S. L. DWIGHT, Judge, presiding.

JOHN J. McGAFFIGAN, and WILLIAM WINKELMANN, for appellants:

When the record of a judgment or decree is relied on collaterally, jurisdiction of the person and subject matter must be presumed in favor of a court of general jurisdiction, although it fails to appear in the record. *Werner v. Thornton,* 98 Ill. 168; *Swearengen v. Gulick,* 67 id. 210.

No particular form of words is necessary to create a power of sale. Any words which show an intention to create such power, or any form of instrument which imposes duties upon a trustee that he cannot perform without a sale, will necessarily create a power of sale in the trustee. 2 Perry on Trusts, sec. 766; *Gammon* v. *Gammon*, 153 Ill. 44.

Parties to a suit, or persons in privity with such parties, cannot be heard to gainsay anything contained in the decree so long as it is in full force.

A. W. HOPE, HOWETT & JETT, THOMAS E. FORD, and R. J. O'NIEL, for appellees:

Where land is devised to an executor with directions simply to divide, no power of sale is implied. 2 Perry on Trusts, sec. 766; *Cornick* v. *Pearce*, 7 Hare. 477; *Clark* v. *Riddle*, 11 S. & R. 311; *Hobson* v. *Hale*, 95 N. Y. 588; *Smith* v. *Claxton*, 4 Mad. Ch. 484; *Hale* v. *Hale*, 125 Ill. 399; *Gammon* v. *Gammon*, 153 id. 41.

A power in a will authorizing an executor to sell or dispose of lands cannot be executed by an administrator with the will annexed. *Hall* v. *Irwin*, 2 Gilm. 176; *Nicoll* v. *Scott*, 99 Ill. 529; *Bigelow* v. *Cady*, 171 id. 229.

Where land is devised to a trustee, and no duties remain for him to perform requiring him to hold the legal title, the statute will execute the use by vesting the fee in the parties lawfully entitled thereto. Rev. Stat. chap. 30, sec. 3; *Witham* v. *Brooner*, 63 Ill. 344; *Lynch* v. *Swayne*, 83 id. 336; *Kirkland* v. *Cox*, 94 id. 400; *O'Melia* v. *Mullarky*, 124 id. 506; *Barclay* v. *Platt*, 170 id. 384.

An admistrator *de bonis non* cannot file a bill to construe a will, having no beneficial interest therein. A trustee or other officer appointed by a decree in chancery to sell land, conditioned upon his executing proper bond, must qualify before he can act. Freeman on Void Judicial Sales, sec. 22; *Williams* v. *Morton*, 38 Me. 47; *Babcock* v. *Cobb*, 11 Minn. 347; *Williamson* v. *Williamson*, 41 Am. Dec.

636;  Freeman on Co-tenancy, sec. 466;  *Crenshaw* v. *Creek,*
52 Mo. 100;  12 id. 157;  2 Perry on Trusts, 414;  *Currie* v.
*Stewart,* 26 Miss. 46.

A sale made by a trustee, commissioner or other officer
appointed by decree must be approved and confirmed by
the court before it is valid.  12 Am. & Eng. Ency. of Law,
219;  *Wagner* v. *Coher,* 6 Gill, 97;  Rorer on Judicial Sales,
sec. 106;  *Coffey* v. *Coffey,* 16 Ill. 141;  *Young* v. *Keogh,* 11 id.
642;  *Ayers* v. *Baumgarten,* 15 id. 444;  *Rawlings* v. *Bailey,* 15
id. 178;  *Dills* v. *Jasper,* 33 id. 272;  *Garrett* v. *Moss,* 20 id. 554;
*Hart* v. *Burch,* 130 id. 432.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the
court:

Appellees filed the bill in this case in the circuit court
of Clinton county for the partition of 393½ acres of land,
claiming title in fee simple in themselves and Ellen Mc-
Kenna, who was made a defendant, as tenants in common
under the will of Owen Mulligan, deceased, and asking
to have certain deeds and a mortgage declared null and
void, as clouds upon the title.  It is alleged in the bill
that Robert C. Lambe, administrator *de bonis non* with
the will annexed of the estate of said Owen Mulligan,
deceased, made sales and conveyances of said lands to
B. H. Stoff, J. T. Zurleine and Clem Schoenhoff, appel-
lants, and to August Peek and J. B. Boeing; that no title
passed by said conveyances; that said J. B. Boeing has
since died intestate, leaving certain of the appellants as
his heirs-at-law, and that there has been a subsequent
conveyance of a portion of the premises and a mortgage
of another portion.  These are the deeds and mortgage
asked to be set aside.  The amended answer of the de-
fendants, J. T. Zurleine, B. H. Stoff, Clemens Schoenhoff,
August Peek and the heirs-at-law of J. B. Boeing, de-
ceased, set forth a proceeding in the circuit court of
Clinton county for the construction of the will of said
Owen Mulligan and the appointment of a trustee for the

purpose of selling the land, in which Robert C. Lambe, administrator *de bonis non* with the will annexed, was complainant and the heirs and devisees of said Owen Mulligan were defendants, and in which the said sales and conveyances were made and a part of the proceeds distributed.   The defendant Robert C. Lambe, administrator, also answered the bill, setting up the same proceeding.   To all those portions of said amended answer which alleged the appointment of Lambe as administrator *de bonis non* with the will annexed, and his qualifying as such, and the proceeding in the circuit court and the sales and conveyances and distribution of part of the proceeds, exceptions were filed by complainants on the ground that the allegations were insufficient in law to present any defense to the relief prayed for in complainants' bill, and for the further reason that as to the averment of distribution it was not stated that the money was paid to and received by complainants, and accepted by them with knowledge of the fact that it was a portion of the proceeds of the sales of the real estate.   The circuit court sustained these exceptions, which eliminated everything in said amended answer in the way of defense, and upon formal proof being made that Owen Mulligan claimed the lands, and the testimony of a witness that the heirs of said Owen Mulligan and their interests were correctly set forth in the bill, the court entered a decree of partition.   The only question here is whether the court was right in sustaining the exceptions.

All the parties stand upon the will of Owen Mulligan as the source of their rights and titles, respectively, and all allege the validity of both the nuncupative and written portions of said will as probated in the county court of Clinton county.   This will, as so admitted to probate, is set out both in the bill in this case and in the bill of Lambe asking for its construction and the appointment of the trustee.   A part of the will was made April 12, 1892, during the last sickness of Owen Mulligan in a

hospital in Aviston, by stating the same to Theodore G. Peek in the presence of J. J. McAllilly and J. Twiss, and was reduced to writing and sworn to by McAllilly and Twiss on April 20, 1892, as follows: "I want all my debts paid first. I want an equal division of all my estate among all my relatives. I gave part of my estate, $24,000, to my relatives in Ireland, in Jersey City and New York. I want the rest to have just as much as I have paid these, and the balance to be divided equally among all my relatives. I want Theodore G. Peek to be executor of my estate without bond. I want him paid well for his trouble. You, Mr. McAllilly and Mr. Peek, can erect for me whatever kind of a monument or tombstone you choose, not to exceed $150. I want this institution well paid." Being asked by Mr. McAllilly, "How much do you want the Sisters to have?" he aswered: "I will settle with them myself." On the following day, April 13, 1892, Owen Mulligan made the will in writing, as follows:

"*In the name of God, Amen.*—I, Owen Mulligan, of Aviston, Clinton county, Illinois, make this my last will and testament:

"*First*—I give and devise to Mr. Theodore G. Peek all my estate, both real and personal, wherever situated, for the purpose to divide it among my relatives, as I have advised in the presence of Messrs. J. McAllilly and J. Twiss.

"*Second*—I nominate him sole executor of this my last will, and no bond or security shall be asked him as such.

"Given under my hand and seal, at Aviston, Ill., April 13, 1892.

His<br>OWEN X MULLIGAN."<br>Mark.

The testator died April 17, 1892, and the statements as reduced to writing, and the written will, were admitted to probate as his last will and testament.

In the bill in this case complainants represent that Owen Mulligan, the testator, in his lifetime made advancements in money to certain of his heirs, which were received and accepted by them as such, as follows: To Patrick Connolly $3000; to Bridget Smith $3000; to Owen Mulligan $5000; to Kate Murphy $3000; to Rose McGough

$2250; to Bridget Carroll $2250; to Eugene Hughes $400, and to Francis Hughes $400; that Theodore G. Peek, the executor and trustee named in the will, died January 12, 1893, without having executed the trust imposed upon him, and left surviving him, at the time of his death, a widow and children, who are made defendants to the bill; that nothing remained for the trustee to do at his death but to divide the property, and that the title has vested in complainants. Although the bill avers the making of these advancements, and the direction of the testator that the rest should have as much as he had so advanced and there should be an equal division of all his estate, the prayer of the bill, and the decree entered under it, seem to entirely ignore such advancements and direction and to ask for and make division of the land itself, regardless of them.

Those portions of the amended answer to which exceptions were sustained alleged that after the death of Peek Robert C. Lambe was appointed by the county court of Clinton county administrator *de bonis non* with the will annexed of the estate of said Owen Mulligan; that he filed a bond, with security in the penal sum of $15,000, conditioned according to law and approved by the county court; that he qualified as administrator and entered upon the administration of the estate; that it became necessary to obtain a construction of the will, and that Lambe filed his bill March 29, 1893, in the circuit court of Clinton county, for such construction and the appointment of a trustee to sell the premises and divide the proceeds in accordance with the intent and meaning of the testator. The bill so filed by Lambe stated that on March 1, 1892, Owen Mulligan, intending to distribute a portion of his estate to his relatives, directed distribution to be made as follows: To Rose Mulligan, widow of his deceased brother, Michael, $1000; to his nephew Owen Mulligan $5000; to his niece Kate Murphy $3000; to his nephew Patrick Mulligan $3000; to his niece Rose Mc-

Gough $3000; to his niece Bridget Carroll $3000; to his nephew Patrick Connolly $3000, and to his niece Bridget Smith $3000; but that the agents having the distribution in charge actually distributed the same in somewhat different amounts, set out in the bill.

It will be noticed that among those to whom advancements were made which were included in the $24,000 mentioned by the testator as given to his relatives, was Rose Mulligan, a sister-in-law, and that fact raised the question whether she was to be regarded as a relative, within the meaning of the term employed by him, and whether in making the others equal and in the distribution of the balance she was to be so considered, and this question the bill submitted to the circuit court. It was also alleged to be uncertain what the term "relatives," as used by the testator, meant, and whether only legal heirs were included within its terms; whether the distribution made by the testator was to be considered as part of his estate and added to it for the purposes of a division, not giving to any who had received an advancement until the others had received a like amount; whether under the will and facts the testator intended that his relatives should share in the distribution *per stirpes* or *per capita;* whether the recipients of advancements should be charged with the amounts the testator directed paid to them or the amounts which they respectively did in fact receive; and whether the lands should be considered as real estate or personal property for the purpose of the distribution. These questions were all submitted to the circuit court.

The amended answer further showed that the heirs of Owen Mulligan, descendants of his brothers and sisters, including the complainants in this bill, or the ancestors (who have since died) of the complainants, were made defendants. Rose Mulligan, the widow of the deceased brother, was also made a party. All the defendants to that bill were duly served, the non-residents by publication and the residents by process of summons. Rose

Mulligan and nine of the appellees having principal interests appeared and filed answers. A guardian *ad litem* was appointed for James Hughes, who was a minor, and said guardian *ad litem* appeared and answered for him. There was a hearing, and the court construed the will and entered a decree accordingly, finding the meaning of the term "relatives," as used in the will, to be only such persons as were related to Owen Mulligan by consanguinity, who should take *per stirpes*, and excluding relatives by affinity; finding who were relatives and the interest of each of them in the estate; declaring that said relatives took no title to the lands but that the same were to be considered personal estate, and appointing Lambe as trustee, to sell the same for the purposes of a division according to the terms of the decree, which also provided that the $24,000 advanced should be deemed a part of the testator's estate, and those to whom distribution and advancements were made should receive nothing until all those related in like degree to the testator should receive an equal amount. The decree required Lambe to file bond, with surety in the sum of $15,000, and to make the sale for one-third cash and balance secured by notes with security and a mortgage on the premises sold. Lambe did not file the bond but advertised the premises, and on July 7, 1893, sold them in different tracts at their highest market value. The sales amounted to about $17,000. The purchasers paid one-third of the purchase money in cash and gave their notes and mortgages in compliance with the decree. At the November term, 1893, Lambe filed his report of the sales in the case, but no action was taken on the report. On December 5, 1893, he distributed $5000 of the purchase money to the complainants or their ancestors and the defendant Ellen McKenna, each receiving a *pro rata* share. On July 8, 1893, the purchasers took possession of the lands, and have since occupied them and made valuable and lasting improvements. At the May term, 1894, of the circuit court, an order was en-

tered staying the distribution of the funds until the next term of court. These were, in substance, the averments to which exceptions were sustained.

There is no denial of the jurisdiction of the court in the former proceeding over the persons of the complainants in this case or those under whom they claim, but it is contended that the court was right in this case in disregarding such proceeding and the adjudication that the beneficiaries under the will took no title to the lands, and in entering an opposite decree and finding, on the grounds that the will was plain and needed no construction; that the lands being devised to Peek to be divided among the testator's relatives, no power to sell was implied; that even if there was a power to sell, it did not descend to Lambe as administrator with the will annexed, and he had no right to file the bill, and that the proceedings subsequent to the decree were so irregular for want of a bond by the trustee and confirmation of the sales by the court that the sales were void.

Of course, the conclusion of the court in this case that the will of Owen Mulligan would admit of but one interpretation, or that it was plain and unambiguous in its terms, would not establish a want of jurisdiction under the bill filed by Lambe. Courts of equity are authorized by law to construe wills in proper cases, and upon the filing of the bill by Lambe the question of the proper construction of the will was brought within the jurisdiction of the court. If it could be said that the court was mistaken in the conclusion that the will required the construction and the appointment of the trustee, it would be merely erroneous. The court had jurisdiction of the parties and the subject matter, and its decree is binding upon the parties. The decree could only be attacked for want of jurisdiction in the court to adjudicate on the subject at all or to bind the persons of the parties, and the court in this case had no right to overturn the construction there given or the decree in that case. While

it is only necessary that the court should have jurisdiction in order that its decree should be binding, we think that it was a proper case for the submission of the questions involved to a court of equity.

It is also insisted that Lambe had no interest in the subject matter and was not authorized to file the bill. No one contends that as administrator with the will annexed he would have been authorized to make a sale by virtue of the will.    Such a power is connected with a personal trust and confidence reposed by the testator in the executor, and without the aid of the court he could not sell the lands devised to such executor.    (*Nicoll* v. *Scott*, 99 Ill. 529; *Hall* v. *Irwin*, 2 Gilm. 176.) But if Lambe, as administrator, had a duty to perform in connection with the property which required a construction of the will and which rendered it necessary that a sale should be made, he was fully authorized to file the bill, and the court might properly construe the will on his application and appoint a trustee to sell the land.    (*Wenner* v. *Thornton*, 98 Ill. 156; *Longwith* v. *Riggs*, 123 id. 258.)    Even if it should be held that he was not entitled to bring the suit, it would not show a want of jurisdiction or render the decree a nullity, but it would be merely erroneous and must be corrected in a direct proceeding.    *Wenner* v. *Thornton*, *supra*.

Although the will contained no power of sale, yet such power arises by implication wherever the duties to be performed under a will cannot be performed without making a sale. (*Rankin* v. *Rankin*, 36 Ill. 293; *Hale* v. *Hale*, 125 id. 399; *Gammon* v. *Gammon*, 153 id. 41.)    The will declared the intention of the testator that there should be an equal division of all his estate among all his relatives, and he devised to his executor all that estate, both real and personal, wherever situated, for the purpose of such division, and stated that he wanted the rest to have just as much as those to whom advancements were made and the balance to be divided equally among all his relatives.

If the requirements of the will were such as to necessitate a conversion into personal property and a distribution in that form, Lambe, as administrator, was so connected with the trust that he could properly apply for the construction of the will and ask for the appointment of the trustee to sell the property. (*Whitman* v. *Fisher*, 74 Ill. 147.) His bill alleged that no division could be made according to these provisions without a sale. There was certainly such a question fairly involved as justified the filing of a bill and the assumption of jurisdiction under it. The court had jurisdiction of the questions submitted to it, and the correctness of its conclusion upon them was not before the circuit court in this case and is not before us for consideration. Its decree cannot be ignored, and we shall not undertake to pass upon such questions or the validity of the titles claimed under the sales. It necessarily follows from what has been said that the action of the court in sustaining the exceptions was wrong.

The subsequent irregularities in the failure of the trustee to give a bond and the want of confirmation of the sales do not, in any manner, affect the question of the right to a partition in this case. While that decree stands, which finds that the lands are personal property to which appellees have no title but which are to be sold and the proceeds divided, they cannot have a partition or recover the land itself in any form of action. Whether the decree in that case has been executed or remains to be executed, such decree is a bar to the right to maintain this bill, and the averments in respect to it constitute a good defense.

The court erred in sustaining the exceptions, and the decree is reversed and the cause remanded, with directions to overrule them and to thereafter proceed in conformity with what has here been said.

*Reversed and remanded.*