Ross v. Harney.

## J. W. Ross, Defendant in Error, v. Bridget Harney et al., Plaintiffs in Error.

### Gen. No. 4,880.

1. Evidence—*what essential to overcome notarial certificate.* The denial of the execution of a mortgage apparently acknowledged in due form, must be clear and convincing and overcome to a moral certainty the notary's certificate, and the master's conclusions finding due execution and acknowledgment will be taken *prima facie* as correct.

2. Conveyances—*effect of absence of acknowledgment.* A deed or mortgage is valid as between the parties without being acknowledged; execution may be proved by the testimony of any one who saw the same executed or by the admission of the grantor.

3. Conveyances—*effect of covenants of warranty.* Where a party executes a deed containing covenants of warranty, whatever title or interest he may have in the land or may afterward acquire, inures to the benefit of the grantee in the deed; a mortgage, therefore, containing covenants of warranty attaches to the distributive share of the mortgagor who has executed such mortgage without title but with an interest in the land which subsequently, through a trustee's sale, made by order of court, is reduced to cash.

4. Delivery—*estoppel to deny agency to make.* One who has signed a mortgage at the request of another and permitted such other to retain possession thereof, is estopped to deny the authority of such other to make delivery to one having no knowledge of the infirmity in authority.

5. Administration of Estates—*power of administrator with will annexed.* An administrator with the will annexed has no right or authority to make a sale of real estate without going into a court of chancery and procuring a decree conferring authority to carry out the directions of the will.

6. Chancery—*power of, with respect to sales to effectuate testamentary intention.* A court of chancery has power to appoint and authorize a trustee to carry out the provisions of a will, and a

33

sale by a trustee appointed by the court to carry out the provisions
of a will must be an absolute sale subject only to the approval of
the court.

Foreclosure. Error to the Circuit Court of Marshall County;
the Hon. NICHOLAS E. WORTHINGTON, Judge, presiding. Heard in
this court at the October term, 1907. Affirmed. Opinion filed
March 11, 1908.

**Statement by the Court.** This case was first taken by
writ of error to the Supreme Court. That court dismissed
the writ of error, holding a freehold was not involved. The
following is substantially the statement of the case as made
by that court in 227 Ill. at page 539, with slight additions.
This is a bill filed August 31, 1903, in the Circuit Court
of Marshall county, for the foreclosure of a mortgage, wherein
it is alleged that Bridget Harney, Charles J. Harney, George
N. Harney and Mary A. Harney-Monier are the mortgagors
and the defendant in error the mortgagee; that said mort-
gagors became indebted to complainant May 1, 1899, in the
sum of $5,000, for which they executed and delivered to
him a promissory note of that date, payable in one year, with
interest at 6 per cent, and to secure said note on the same
day executed a mortgage on certain real estate in Marshall
county, Illinois. The bill closes with the usual prayer
for foreclosure proceedings.

George N. Harney answered, denying that he ever exe-
cuted the note and mortgage or that he ever was indebted
to complainant.

Mary A. Harney-Monier answered, denying that she or
any of her co-defendants, jointly or severally, ever became
indebted to the complainant or that they ever executed and
delivered said note and mortgage; further answering, that on
May 28, 1888, Daniel Harney died in said Marshall county,
and left him surviving, as his only heirs-at-law, his widow,
Bridget Harney, and George N. Harney, Charles J. Harney
(a minor), Mary A. Harney-Monier, William H. Harney
(since deceased), Joseph Harney, Kate Harney, Thomas
A. Harney, Daniel Harney, Jr., John M. Harney (since
deceased), Maggie Harney, Edmund H. Harney and Robert

Harney, his children; that said Daniel left a will, providing, among other things, that after the payment of his debts his wife should receive one-third of the net income, rents and profits of his real estate and one-third of his personal estate for her separate use and benefit, to be taken in lieu of dower; that his real estate should be kept together and rented to the best advantage until the youngest child reached majority, and after paying out of said rents all necessary repairs, taxes and insurance, one-third of the net sum should go to his wife as long as she should live, and the remainder of the said rents and net income, along with the personal property not going to his wife, should be put together annually and annually divided, one-third, each, to his sons, Charles J. and George N., and his daughter, Mary Ann, until his daughter reached the age of sixteen, and from thence said income be divided equally between his said sons, George N. and Charles J., until the youngest arrives at his majority; that in case one of the two dies before majority the income going to him shall be added to the principal of the personal property until the survivor reaches majority; that after his youngest living child arrives at majority all of the real estate shall be sold by his executors under power given by the will to his executors to convey, and if his wife be living at the time of the sale of said real estate she be paid a gross sum in compensation for her release of her interest, or they reserve one-third of the proceeds and pay her the proceeds for her life, or sell the real estate subject to the life estate, or make any other arrangements satisfactory to her and the executors; that he gives and bequeaths to Robert F., Charles J., and George N. $3,000 each, and to his son Edmund and daughter Mary Ann $1,000 each, to be paid to them out of the proceeds of the real estate and personal property within one year after the real estate be sold; that if any legatee die before the time of payment of the legacies, leaving children, then his legacy should not lapse but go to such children, otherwise the legacy shall lapse and fall into the residue; that all the residue of the estate, both real and personal, should go to his sons, Charles

J. and George N., share and share alike; that his children, William, James, Thomas, Daniel, John, Kate and Margaret, are so circumstanced in life as not to be entitled to any further part of his estate. Said defendant, Mary A. Harney-Monier, further answering, alleged that (the executors named in the will declining and refusing to act) defendant, Bridget Harney, was appointed administratrix *de bonis non* with the will annexed; that under and by virtue of the terms of the will the mortgage set forth in the bill of complaint is of no force or effect against any of the rights of this defendant in said real estate described in said mortgage, or the proceeds thereof.

The answer of Bridget Harney denies that she was ever indebted to complainant or that she ever executed and delivered the note and mortgage; states that said note and mortgage were procured from the defendants by fraudulent, false, untrue and scandalous representations, tricks and devices, in that complainant loaned small sums of money, amounting to less than $1,000 to one Thomas Harney, a son of this defendant and brother of the others, and charged Thomas Harney excessive and usurious interest in violation of law, and fraudulently and falsely and intentionally represented to defendants that said Thomas was indebted to complainant for $5,000 and that unless the defendants made, executed and delivered to the complainant the note and mortgage said Thomas Harney would be arrested, prosecuted and sentenced to the penitentiary; denies the right of complainant to have the right of foreclosure for any greater sum than was actually due on the debt of said Thomas Harney.

Charles J. Harney answered, setting forth the same claim of fraudulent representations as made in the answer of Bridget Harney, and denying that he ever was indebted to complainant or that he ever executed, acknowledged or delivered the note or mortgage in question after he became twenty-one years of age; and stating that he was a minor at the time the note and mortgage were signed and delivered, and has never ratified the same since coming of age.

The bill was thereafter amended so that it alleged, among

Ross v. Harney.

other things, the following: That at the time the defendants executed the mortgage deed in question they covenanted and warranted that they were lawfully seized in fee simple of the premises, free and clear of all encumbrances; that at the time of the execution and delivery of said note and mortgage complainant received the same without notice of the rights of the parties under the last will and testament of said Daniel Harney; that he relied on the covenants of the mortgagors that they were the owners in fee and had good right to convey the same; that on October 27, 1888, Robert F. Harney, defendant, executed and delivered to Bridget Harney a quit-claim deed to the land described in the will, which deed was duly acknowledged and recorded, and also executed an assignment to Bridget Harney of the $3,000 legacy given him by the will of his father; that Charles J. Harney is the youngest child and legatee of Daniel Harney and that he was past twenty-one years of age at the time of the commencement of this suit; that the executors named in the will refused to act and that Bridget Harney was appointed administratrix *de bonis non* and is still acting; that defendants elected to treat the bequest and devise to them under the last will as real estate and not have the same converted into personal property and distributed as legacies, and that by virtue of the covenants of warranty in the mortgage deed defendants are estopped to deny that they had so elected; that in case the court should hold that the fee did not pass by said mortgage deed to the complainant, it should order and decree the sale of said premises by the administratrix or the master in chancery in accordance with the direction of said will, and out of the proceeds of such sale belonging or payable to the defendants, Mary A. Harney-Monier, George N. Harney, Charles J. Harney and Bridget Harney (including the $3,000 legacy to Robert F. Harney, assigned by him to Bridget Harney), the court should decree payment to complainant of the amount due him of principal and interest and costs.

To the amended bill the widow, and all those heirs and descendants of Daniel Harney, deceased, who by his will are

entitled to share in the proceeds. of said real estate, were made defendants.

To the amended bill defendants filed a joint and several answer, alleging, among other things, that the defendant Mary A. Harney-Monier signed the mortgage under misrepresentations, but never signed the note and never delivered or acknowledged the mortgage; that George N. Harney never signed or ratified the note or mortgage and never delivered or ratified the delivery. of the same; that the defendant Bridget Harney signed the mortgage and note with the express understanding that nothing was to be done with them until she had an opportunity to ascertain the truth of the representations, and never acknowledged or delivered, or consented to the acknowledgment or delivery of either of them. Defendant Charles J. Harney acknowledged that he signed the note and mortgage, but averred that he never in fact delivered the same or either of them, and that he signed them while he was a minor and has never ratified them since he became of age. They jointly denied that the complainant was entitled to the relief, or any part thereof, asked for in his amended bill. After the pleadings were settled the case was referred to a master who took evidence and reported that the mortgage and note had been duly acknowledged and delivered by the mortgagors heretofore named; that Bridget Harney, George N. Harney and Mary A. Harney-Monier, by virtue of the covenant of warranty in the mortgage that they were the owners of the real estate in fee, were estopped to deny their title and interest in the premises, and that Robert F. Harney had transferred all his interest to his mother, Bridget Harney; that the said Charles J. Harney signed and executed the mortgage while he was a minor, and that he and Edmund Harney had not elected to treat the bequests as real estate and therefore were not estopped in these proceedings. Exceptions were filed to this report, which were in the main overruled, the decree of the chancellor finding, among other things, in addition to the findings of the master, that as the said legatees, Charles J. Harney and Edmund Harney, have not elected to treat the

gifts and bequests under said will as real estate, they were entitled to have the premises sold under and by virtue of the terms of said will and to have the proceeds thereof distributed by virtue of its provisions; that some suitable person should be appointed as trustee by the court for the purpose of making such sale, and that the distributive shares of Bridget Harney, George N. Harney and Mary A. Harney-Monier, payable to them under the terms of the will, arising out of the proceeds of said sale, be first applied to the payment of costs of this proceeding and the amount due upon the indebtedness under said note and mortgage. The decree continues: "It is therefore ordered, adjudged and decreed  *  *  *  that within sixty days from this date said George N. Harney, Bridget Harney and Mary A. Harney-Monier pay to complainant $6,722.49, with legal interest thereon from this date, and the costs of this suit.  *  *  * In default of such payment being made, as aforesaid, by the said defendants,  *  *  *  then and in that case the premises mentioned  *  *  *  be sold at public vendue, for cash," etc. The master was by the decree appointed a trustee to make sale under the will, and it was provided that the sale be made without right of redemption.

All the defendants below have joined in suing out this writ of error, bringing the record from the Circuit Court to this court for review, and here insist upon all the defenses set up by the answers.

BARNES & MAGOON, for plaintiffs in error.

WINSLOW & EVANS, for defendant in error; F. W. POTTER, of counsel.

MR. JUSTICE THOMPSON delivered the opinion of the court.

It is assigned for error and argued that Bridget Harney and Mary A. Harney-Monier did not acknowledge or deliver the note and mortgage; that George N. Harney neither signed nor delivered them, and that he never acknowledged the

mortgage. Bridget Harney, Mary A. Harney-Monier and George N. Harney each insisted in their answers that they never executed and delivered the note. Bridget Harney and Mary A. Harney-Monier do not now insist that they did not execute the note, and admit that the signatures to the note and mortgage are their signatures, but they deny that they ever acknowledged or delivered the mortgage. It is insisted still that George N. Harney did not execute either the note or mortgage. The record shows that defendant in error Ross conducts a bank at Walnut in Bureau county, under the name of the Walnut Bank, and that Bridget Harney, T. A. Harney and E. S. Harney on January 23, 1899, confessed a judgment to the Walnut Bank for $1,513.66 and costs; that T. A. Harney had bought some swamp land in Henry county from parties in Rock Island, and desired to borrow money from Ross to make payments on this land, but could not do so without first securing or paying the judgment against him and his mother, Bridget Harney, and brother, E. S. Harney; that T. A. Harney negotiated for a $5,000 loan from defendant in error through M. A. Stiver, an attorney; that Stiver prepared a note and mortgage to be executed by Bridget, Charles J. and George N. Harney and Mary A. Harney-Monier and gave them to T. A. Harney to have executed. The evidence shows that the note sued on is the note prepared by Stiver but the mortgage is not the one prepared by him. Thomas F. Clover, an attorney at Henry near where the plaintiffs in error resided, testifies that he prepared the mortgage sought to be foreclosed; that he has known the plaintiffs in error ten or twelve years; that Charles J., Bridget, and George N. Harney and Mary A. Harney-Monier signed the mortgage before him as a notary public; that the makers of the mortgage came to his office at different times and he saw each of them sign their respective names, and that George said at the time he signed the mortgage, "I came in to sign that mortgage," and that T. A. Harney took the note and mortgage from the office. He also testifies that he does not remember seeing the note executed but he knows the signature, George N. Harney, to

the note is George N. Harney's signature.   T. A. Harney
testifies that George's name was placed on the note while
George had it in his possession at Annawan while he was get-
ting dressed to go to Geneseo, and that George had the
mortgage at the same time, but says he cannot say whether
they are his signatures.   George N. Harney's mother,
Bridget Harney, testifies that George writes several ways
and that the disputed signatures are much like his.   His
brother Charles testifies that he is familiar with George's
signature, but cannot say whether they are his or not, and
his sister Mary testifies that she knows his signature but can-
not swear it is his signature to the note, and that when she
signed the papers she thought George had signed them.
George's name appears on both the note and mortgage be-
neath the signature of Bridget Harney and next above that
of Mary Harney-Monier, which is the last of the signatures
to both the note and mortgage.   On the mortgage the signa-
tures are upon four successive lines printed for the guidance
of signers, while on the note the four signatures are crowded
into the space intended for three signatures.   The mortgage
also has the official certificate of acknowledgment of Thomas
F. Clover, notary public.   It is shown by the evidence that
T. A. Harney delivered the note and mortgage to defendant
in error and received for it three drafts, one payable to the
order of George N. Harney for $2,205; another for $461.25,
payable to the order of George N. Harney; and one for
$608.79 payable to the order of T. A. Harney; and $183 in
money, and a release of the judgment held by the Walnut
Bank.   George N. Harney received the drafts for $2,666.25
payable to his order from the money procured through this
note and mortgage, and used the same to make a payment
on T. A. Harney's land contract.   In August, 1902, George
N. Harney wrote to the Walnut Bank to postpone the case
and said, "will be up to make arrangements Monday or
Tuesday of next week."   This was before the suit was be-
gun, when the bank was urging payment and threatening
suit.   George N. Harney testifies he did not sign either the
note or mortgage and says they are not his writing; how-

ever he does not seem to recognize his own signature clearly, as he says his brother T. A. Harney gave him the two drafts payable to George N. Harney to take to Rock Island and make a payment on the land, and testifies that the indorsement on the back of one of the drafts "looks like my signature but I do not remember signing it. I do not think that I did." He also testifies that the drafts were given him to take to Rock Island in 1898, while the drafts were issued in 1899, and that in 1898 or 1899 he told T. A. Harney he could do nothing to help him get money to pay the judgment. The only witness besides George N. Harney who testifies positively that the names George N. Harney on the note and mortgage are not the signatures of George N. Harney is his brother James H. Harney, who testifies his brother George was in the swamps at Annawan in Henry county the last half of April and the first week in May, 1899, and yet said he (James) was in Chicago all of 1899. He does not appear to recognize the genuine signature of his brother George, since he testifies that the letter written and signed by George in August, 1902, "Exhibit C," is not George's writing, although George had testified that he wrote and signed it. Charles J. Harney testifies that he "signed the note and mortgage at his mother's home; that Tom came from Annawan and asked him to sign them." Margaret Harney testifies that Charles was not at home at that time, but at Annawan. Mary A. Harney-Monier tesitfies that she did not sign the note, and T. A. Harney testifies he saw her sign it. The members of the family contradict each other to such an extent on material matters that we think the court was justified in finding that the evidence of the defendants did not overcome the positive testimony of Clover and the notarial certificate. To find otherwise would be to hold that some member of the family was guilty of forgery. In a matter of this kind the conclusions of the master are *prima facie* correct. Ennesser v. Hudek, 169 Ill. 494. The Circuit Court approved the finding of the master and we hold that such finding is sustained by the weight of the evidence.

The signatures of Bridget Harney and Mary A. Harney-Monier to the mortgage are proved by the evidence of mem-

bers of the Harney family. Its execution is sufficiently proved, and it is valid as to them, without the evidence of the notary or his notarial certificate. A deed or mortgage is valid as between the parties without being acknowledged, and its execution may be proved by the testimony of anyone who saw the same executed or by the admission of the grantor. Roane v. Baker, 120 Ill., 308; Semple v. Miles, 2 Scam., 315.

It might be observed, regarding the mortgage alone, that to impeach a notary's certificate "the evidence should do more than produce a mere preponderance against its integrity in the balancing of probabilities." The authorities very clearly lay down the rule that evidence offered to impeach a certificate of this character must fully and clearly satisfy the court that the certificate of the officer is false and fraudulent, and even a preponderance of evidence less than sufficient to establish a moral certainty to that effect is not sufficient. Brady v. Cole, 164 Ill., 116; Gritten v. Dickerson, 202 Ill., 372.

The makers of the note and mortgage did not personally deliver them to the defendant in error, but having signed them at the request of T. A. Harney and permitted him to have possession of them, they cannot be heard to say that he was not their agent to deliver them. When they permitted him to take the instruments they had signed it could be for no other purpose than to deliver them to the defendant in error, payee in the note and grantee in the mortgage; to hold that they were never delivered under the circumstances shown by plaintiffs in error would be to permit the makers to perpetrate a bald fraud on an innocent holder. All the circumstances' shown surrounding the transaction indicate a purpose and intention to make T. A. Harney an agent to deliver the note and mortgage.

It is also insisted that the court had no right to order a sale of the real estate described in the mortgage, and that a sale absolute without the right of redemption was error. The fourth clause of the will of Daniel Harney directed " that so soon as my youngest living child shall arrive at his or her majority, that all my real estate shall

be sold by my executors," etc. It is alleged in the bill that the executors nominated in the will refused to qualify and that Bridget Harney is the administratrix with the will annexed, and that Charles J. Harney is the youngest child of the deceased, and that he was past his majority when the bill was filed. These allegations were proved. The administratrix with the will annexed had no right or authority to make a sale without going into a court of chancery and procuring a decree authorizing her as trustee to carry out the directions contained in the will. Hall v. Irwin, 2 Gilm., 176; Stoff v. McGinn, 178 Ill., 46; Penn v. Fogler, 182 Ill., 76; 11 Am. & Eng. Ency. (2d ed.) 1321. A court of chancery has power to appoint and authorize a trustee to carry out the provisions of a will. Hall v. Irwin, *supra*. A sale by a trustee appointed by a court to carry out the provisions of a will must be a sale absolute, subject only to the approval of the court.

The time having arrived for the sale of the real estate described in the will, the question arises was the complainant authorized in any way to file a bill asking for the appointment of a trustee to carry out the provisions of the will. Bridget Harney has an interest in one-third of the real estate or its proceeds for her life and the $3,000 legacy out of the proceeds that she purchased from Robert Harney. George N. Harney is entitled to a $3,000 legacy, and a half interest in the residue after the payment of the legacies, subject to his mother's life interest, and Charles J. Harney has an equal interest with George. Mary A. Harney-Monier and Edmund Harney are each entitled to a legacy of $1,000 out of the proceeds of the real estate. Bridget, George N. and Charles J. Harney may have determined and elected to receive the real estate in place of having the property sold and converted into cash. The real estate is directed to be sold when the youngest child shall arrive at majority, and the legacies are to be paid within one year thereafter by the fourth, fifth and sixth provisions of the will. Neither Robert, Charles, George, Edmund nor Mary had died before the time for the payment of their respective legacies, and the right to the legacies had become abso-

Ross v. Harney.

lutely vested in them. The eighth clause of the will provides: "All the rest, residue and remainder of my estate both real and personal, I hereby give, devise and bequeath to my sons Charles J. and George N. to be divided equally between them share and share alike." The rest and residue that might remain after the payment of legacies is vested absolutely in George and Charles. If the legacies were paid there is no equitable reason why Bridget, George, and Charles might not take the real estate, and not have it sold to take the proceeds. Bridget was asked whether she, Edmund, George and Charles had not agreed to hold the farm and not sell it under the will and she answered, "We have had no writing. I have thought myself that I would always remain there if they don't want to sell it." "Have you and your sons and Mary A. Harney-Monier talked it over and agreed among yourselves verbally that you will keep it as land and not sell it under the will?" To that she answered: "I have no answer to that." "We have lately executed a mortgage on these lands for $4,000 to Charles R. Jones; we had no understanding or agreement to treat our interest in these lands as real estate and not have it sold under the will when we made that mortgage. Mary A. Harney-Monier did not join with me in this mortgage." The record contains no evidence as to what Edmund has done or claimed with reference to the legacy to him, nor whether he signed the Jones mortgage or not, neither is it averred or any proof made whether the residuary legatees have or have not paid the other legatees so as to avoid a sale by the trustee to carry out the terms of the will. The mortgage given by plaintiffs in error to defendant in error has full covenants of warranty. Where a party executes a deed containing covenants of warranty, whatever title or interest he may have in the land or may afterwards procure inures to the benefit of the grantee in the deed.

It is alleged in the bill that the plaintiffs in error who had executed the mortgage should by reason of their covenants be estopped to claim and receive their share of the proceeds of the sale of the real estate under the will. Defendant in error parted with his money in exchange for the

mortgage. To permit plaintiffs in error to obtain a loan upon a mortgage with full covenants of warranty on property they had no legal title to, but which was to be sold under a will and part of the proceeds paid to plaintiffs in error, and to say they had no interest in the property that was subject to be mortgaged, and permit them to receive the proceeds of the sale as against the mortgagee, would be to sanction a fraudulent result and to uphold plaintiffs in error in the perpetration of a fraud. In Lagger v. Mutual U. L. Assn., 146 Ill., 283, where a widow who was the administratrix, had fraudulently, by connivance with third parties acting for her, bought land at an administratrix's sale. to pay debts of which the principal debt was her award, and given a mortgage on the land, the sale was set aside because of her fraud, and it was held on a resale that she was estopped to claim her award and the costs of improvements due her, and it was ordered that the proceeds due her on her award and for improvements should be paid to the mortgagee by virtue of the estoppel arising from the covenants of warranty in the mortgage. In Baldwin v. Vreeland, 43 N. J. Eq. 446 (11 Atl. R., 341), a testator devised his real estate to his executors to sell and convert the same into cash and divide the proceeds equally between his wife and three sons, except a certain portion in which the wife was given a life estate, and this was to be sold by the executors after her death and divided amongst the sons. Before the death of the wife one of the sons attempted to convey his interest in the portion not to be sold until after his mother's death by a mortgage, and was afterwards adjudged a bankrupt, and died leaving children. It was held the interest which the mortgagee took as between him and the mortgagor was a complete title, and could not be impeached by the mortgagor or those in privity with him; no one claiming a conveyance for a valuable consideration *bona fide* in hostility to the mortgage. The court held "the execution and delivery of the mortgage for a valuable consideration operated as an equitable assignment which it is the duty of the court to recognize and maintain." The mortgagee was held entitled to receive on an executor's sale the distributive share of the

mortgagor as against his children. Cases of an involuntary sale under an execution or an attachment by creditors of legatee's interests under similar wills are in no way analogous, and the principle involved·in such cases is not involved in this case.

The mortgage executed by Bridget Harney, George N. Harney and Mary A. Harney-Monier, plaintiffs in error, must in equity be regarded as an equitable assignment of the interest of these plaintiffs in error in the land or the proceeds thereof to the extent of the mortgage should the land be sold. The defendant in error under such an assignment had a right to have the land sold to carry out the provisions of the will, unless the plaintiffs in error, Bridget, George, and Mary, should pay defendant in error, and the defendant in error is entitled to receive the interest of Bridget, George and Mary to the extent necessary to pay the mortgage, if the same is sufficient, and the balance if any will be distributed by the court under the will. We find no error in the decree and it is affirmed.

*Affirmed.*