(No. 27956.—

MINNIE SMITH *et al.*, Appellants, *vs.* HARRY F. KELLEY *et al.*, Appellees.

*Opinion filed May 16, 1944—Rehearing denied September 18, 1944.*

214

MURAL J. WINSTIN, of Chicago, and WILLIAM R. BE-HANNA, of Waukegan, for appellants.

ERNEST S. GAIL, of Highland Park, and ALVIN GLEN HUBBARD, of Chicago, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants, as holders of what are known as "certificates of beneficial interest," under a certain deposit agreement, entered into by holders of bonds secured by a trust deed on certain described property known as No. 538-40 Highland Park, in Lake county, filed a bill in the circuit court of that county seeking partition, an accounting, termination of the trust by carrying out the terms thereof prescribed by the deposit agreement, for other relief there specified, and for other and further relief as to the court shall seem just. Defendants, appellees, who were a bondholders' committee, filed a motion to strike the complaint as amended, and that motion was sustained. Appellants abided their complaint and the same was dismissed for want of equity. A freehold being involved, the appeal comes directly to this court.

The complaint consists of two counts and alleges appellants to be the holders of certificates of beneficial interest evidencing the deposit by them of $11,500 in bonds under the deposit agreement hereinafter referred to.

The trust deed securing the bonds was issued by the Udell Printing Company on May 1, 1928. The bonds were 375 in number, of $500 each, aggregating $187,500. Default of the conditions of the trust deed occurred on November 1, 1932, and on January 19, following, appellees, or their predecessors, as such, formed a bondholders' protective committee and solicited deposit of the bonds under the deposit agreement. This agreement was dated January 19, 1933. There was thereafter deposited with the committee, bonds in the sum of $174,500. Certificates of beneficial interest were issued by the committee, reciting the facts referred to, giving the aggregate amount of the bonds issued, and stating that the holder of the deposit certificate is entitled "to share in the benefits of said Agreement in respect of the number of beneficial interests repre-

sented by the Certificate of the Deposit of bonds in lieu of which this certificate is issued and to the rights and interests as a depositor as the same are specified and defined in said Deposit Agreement." The certificate also recites that the holder thereof assents to and is bound by the provisions of the deposit agreement. On July 12, 1933, appellees, as the bondholders' committee, purchased the equity of redemption in the property mortgaged, with the $174,500 in bonds deposited with it, and took up or settled with the holders of the $13,000 of bonds remaining outstanding, thereby acquiring the fee-simple title to the property, consisting of one lot with a building thereon, containing a number of apartments and two store rooms.

The complaint also alleges that no definite time was fixed in the deposit agreement in which the committee was to sell or dispose of the premises, but that more than a reasonable time, to-wit, nearly ten years, has elapsed without liquidation or sale of the property, contrary to the intent and purpose of the deposit agreement. It also appears from the pleadings that on April .1, 1936, the committee issued certificates of beneficial interest, which were distributed to the bondholders in lieu of the certificates of deposit, which were taken up by the committee. The complaint alleges that under the provisions of the deposit agreement the committee was empowered, either to create a corporation to hold the property in trust, or to appoint a trustee for that purpose; but, although nearly ten years have elapsed, they have failed to appoint a trustee or form a corporation to sell or liquidate the premises. It is further charged on information and belief that the committee has misused and improperly diverted the funds in that they purchased land other than that involved under the trust deed, and used funds of the certificate holders to purchase outstanding certificates of beneficial interest. It is also charged they paid themselves and their agents and employees large and excessive fees.

Appellants owned 23/349ths of the bonds deposited and claim that they are entitled to receive a conveyance of that fractional interest in fee simple. They pray for partition and an accounting, appointment of a receiver, restraint of the committee from conveyance or expenditures pending further orders of the court; or, in the alternative, that the committee as trustee be required to carry out the terms of the trust created by the deposit agreement, or that a new committee or trustees be appointed so to. do, and that the estate be brought into court and be administered upon by the court; that the deposit agreement and the trust created thereby be construed, and that the duties and obligations of the parties be defined and a sale had, and, as we have seen, for further relief such as to the court shall seem just. Appellees' motion to strike the complaint was based on the ground that it failed to state facts entitling appellants to any relief; that there is no showing that plaintiffs have title, either legal or equitable, in the premises, and that the interests of the plaintiffs are only in the proceeds, rents, issues and profits and not an interest of any sort in the real estate.

It is urged here by appellants that they are entitled to partition as owners of an undivided equitable interest in the premises; that the appellee committee should not be allowed to remain in possession or control of the property for an indefinite period, or a period of time to be determined by them alone; or it should be required to account and the estate be brought into court and administered as a trust that has terminated.

Appellees, on the other hand, claim that under the deposit agreement and action taken by the committee after the execution of that agreement, an active trust was created which was to be terminated not later than twenty-one years from the date of the creation of such trust, and that this is not a case in which a trust was created with no definite time for its termination fixed.

Principal and first among the questions to be considered is the construction of the deposit agreement. The purpose of this agreement, as stated therein, was to obtain united action for the protection of all bondholders who had deposited their bonds with the bondholders' committee, to obtain title to the property by purchase, foreclosure or otherwise, collect and conserve the income and to dispose of the *corpus* for the benefit of all depositing bondholders. It provided that the committee might take title to the property as joint tenants with survivorship among its members, with power to manage, control and operate the property, or to vest the management in a corporation or a trustee, and provided reasonable compensation for members of the committee.

By the deposit agreement the depositors sold and transferred to the committee the full legal, equitable and beneficial title to all the bonds deposited by them, for the purposes set forth in the deposit agreement, and each agreed that the committee be vested with all necessary authority to carry out and perform the purposes contained in the agreement, with the right to exercise absolute ownership of the property. By this agreement the committee was authorized to do whatever it deemed expedient to procure the sale or exchange of all or any part of the property, to purchase it either on foreclosure or at private sale, whichever in the judgment of the committee would promote the interests of the depositors. The committee was also authorized to make any adjustment or settlement with any owners of bonds not deposited, on such terms as to the committee seemed advisable.

Article III of the deposit agreement provides that the committee might "purchase, or provide for the purchase, or acquire any such property, [the mortgaged property] or any lien thereon or obligations secured by lien thereon or any other property or thing of use in the judgment of the Committee in promoting the interests of the Depos-

itors." It was also in article III provided that the committee have full power, pursuant to any agreement of any corporation now or previously associated with the mortgagor in the operation of its business and in conjunction with the holders of obligations or securities of any such corporation, to purchase or arrange for the purchase or acquisition of furniture, equipment, furnishings and the like.

Article IV provided, by section 1, that the committee shall have power to enter into or become a party to any plan or agreement or reorganization of the property, consistent with the rights of the bondholders, or refinancing, settlement, adjustment or compromise of the rights of the bondholders with reference to the bonds. Section 4 of article IV provides that in event the committee acquires, either in their own names or in the name of any nominee or trustee selected by the committee, "any property, whether or not subject to said trust deed, at any sale thereof on foreclosure or otherwise," the rights of the depositing bondholders shall be only in the proceeds, rents, issues and avails of such property and not an interest, legal or equitable, in the real estate or property, and that their rights shall at all times be deemed personal property, and upon the death of any holder thereof such interest shall pass to his personal representatives and not to his heirs-at-law. It is also provided that in the event the committee shall become the purchaser at any sale under decree of foreclosure, it might cause the master's certificate to be issued and delivered to the committee, or, in the name of the committee, to any person or corporation authorized to accept trusts, to hold the same in trust for the benefit of the committee, and cause a master's deed, on failure to redeem, to vest title in the committee. It is also provided that upon purchasing the property, whether in its own name or in the name of the corporation to be organized, or in the name of a trustee or trustees, the

committee is to have the full power and authority to manage, control, rent, mortgage, sell or otherwise deal with and dispose of the property, as it may deem best for the interests and protection of the depositors. It is provided also that after such corporation is formed, (if one be formed,) the committee shall cause the shares of stock, bonds or other securities of such corporation to be issued to such committee, to be held and controlled by it as long as it shall deem advisable, in which event the committee might or might not, as it chose, issue to the depositors such depositary receipts or certificates as would evidence the interest of the depositors, and the property under such circumstances might be sold, mortgaged and conveyed by the corporation, or the committee, in its discretion, might sell, pledge and deliver the shares of stock. It is also provided: "If such corporation shall not sell or dispose of the property within the period of twenty-one years from the date such title is vested in it, and the Committee has not sold or disposed of the shares of stock, bonds or other securities thereof, the Committee shall thereupon distribute the shares of stock, bonds or other securities in said corporation to the Depositors pro rata according to their respective bonds and matured and unpaid coupons." It is further provided that while the title is vested in such corporation organized by the committee, the committee shall have full power and authority "to direct and control said corporation and to make advancements to said corporation and pay all costs, expenses and/or other charges which in its opinion shall be necessary or advisable, including the compensation of the Committee, and provide for repayment of the same to the Committee out of the proceeds of any sale or otherwise or require the Depositors to repay the same upon the distribution of the shares of stock or bonds or other securities of said corporation."

It is also, in section 4 of article IV, provided that if the title to property shall be vested in a trustee or trustees,

his or its certificates of interest may, in the discretion of the committee, be issued to the depositors pro rata, according to their respective bonds and coupons, or issued to the committee "and be held by it during the trust period (which shall in no event exceed twenty-one years) and at any time or times after their receipt by the Committee be sold and disposed of by the Committee and the proceeds thereof (less costs, expenses, etc.) distributed pro rata to the Depositors according to their respective bonds and matured and unpaid coupons, or such certificates of interest may be surrendered by the Committee to the Trustee and new certificates of interest be issued and distributed by the Committee to the security holders as hereinabove provided. The Committee shall have full power to determine the form of all such certificates and the terms and provisions of any trust agreement under which such trustee or trustees may take or hold title to such property, and may cause to be embodied in such trust agreement and in such certificates such terms, conditions and provisions as it may deem advisable, and may cause said certificates to evidence an interest only in the proceeds of sale of said property, and to provide that such interest shall be personal property during the period of said trust, and to provide that neither the Committee nor any Depositor shall have any right, claim or interest in said property, or any right of dower or curtesy. The trustee or trustees shall have full right, power and authority to sell and convey such property, but in making any such sale shall be entitled to act pursuant to instructions from the Committee and to mortgage, sell, rent for any term of years, convey, or otherwise dispose of said property for such price and upon such terms and conditions as to the payment of purchase price, rental or otherwise, as the Committee shall direct."

It is conceded that no corporation was created to take title to this property. Appellants argue that no trustee was

appointed in accordance with the provisions of section 4 of article IV of the deposit agreement. Appellees, on the other hand, argue that when they issued the certificates of beneficial interest on April 1, 1936, which took the place of the deposit certificates, they thereby created an active trust, which they had a right to do, and since that time they have been acting as trustees under that trust. This claim forms one of the important questions in the case.

Appellants concede that on receiving the certificate of beneficial interest, the depositors ratified and affrmed the acts of the committee under the agreement up to the time of the issuance of such certificate and are bound by the provisions of the deposit agreement, having interest only in the rents and profits, which are to be treated as personalty. They claim, however, that since no corporation was created to hold the property in trust, and since there was no appointment or designation of a trustee to so hold the property, they, by reason of their deposit agreement of January 19, 1933, and the subsequent acquisition of the premises in exchange for deposited bonds, became, under the deposit agreement, the beneficiaries of a resulting trust of which the committee were trustees, and since the deposit agreement does not specify any time in which such trust shall be terminated, they are entitled to partition as the holders of the beneficial interests under that trust.

This contention gives rise to two questions. The first question is, it being conceded that the committee did not create a corporation to hold that property and manage it, did they, by issuing the certificates, create a trust of which they were trustees? As we have seen, section 4 of article IV of the deposit agreement provides that the committee may appoint a trustee or trustees, that if and when it is done, the committee shall determine whether new trust certificates shall be distributed and shall have full power to determine the form of those certificates and to provide that such interest shall be personal property during the

period of the trust, under which neither the committee nor any depositor shall have any right or claim in the property nor any right of dower or curtesy, and that while any trustee or trustees shall have power and authority to sell and convey the property, in so doing it is to act "pursuant to instructions from the committee" and, if it mortgages, sells or rents the property, it shall do so upon such terms "as the committee shall direct." This is not the appointment or creation of a trustee or the formation of a trust. The committee remains a committee as distinguished from a trustee of a trust created by it under the provisions of the deposit agreement. It retains power to control the actions of such trustee. It is therefore inconsistent to say that the committee, when it issued the certificates of beneficial interest on April 1, 1936, thereby created a trust. Nothing was done to change the relationship of the committee to the property as created by the deposit agreement, and we are of the opinion that no trust, as distinguished from that created by law by reason of the acceptance of the deposit of bonds and the purchase of the property by the committee, is shown in this record. The complaint charges there was no such trust created and the motion to strike admits such facts as are pleaded, though, of course, not conclusions asserted as arising therefrom.

The second question is as to whether there is created by the deposit agreement a definite time within which the trust must be terminated and the estate wound up. The only language appearing in the deposit agreement which has to do with limitations, is that regarding the creation of a corporation, which it is conceded was not created, wherein it is provided, in section 4 of article IV, that, if the corporation shall not dispose of the property within a period of twenty-one years "from the date such title is vested in it," the shares of stock in such corporation shall be distributed. It is also provided in section 4 of article IV that in case the title to the property shall be vested in a

trustee or trustees, such trustee or trustees shall hold it "during the trust period (which shall in no event exceed twenty-one years.)" It is clear that the purport of section 4 of article IV of the deposit agreement is that if the committee creates a corporation or appoints a trustee, (and it is not required so to do,) such corporation, if created, shall dispose of the property in twenty-one years after title is vested in it, and if a trustee be appointed, it shall dispose of the property within not to exceed twenty-one years. It does not so specify, but the purport of the meaning of that language is that such twenty-one years would begin to run when such corporation or trust is created. This is not fixing a definite time for the sale of the property or disposal of the corpus of the trust created by the deposit agreement. The purpose of the existence of the committee is to acquire the property and to dispose of it to the best advantage of the bondholders. Equity will accord a reasonable time to carry out the trust. A trust will not be continued after the active duties connected with it have terminated. (*Kohtz* v. *Eldred,* 208 Ill. 60.) The rule is that where lives are not involved in the duration of a trust, it must be terminated in twenty-one years. (*Smith* v. *Renne,* 382 Ill. 26.) This is the applicable law. It is not sufficient to say that therefore there is here fixed by the deposit agreement a time for the termination of this trust. Since the law applies to all such trusts there would, if that were a sufficient limitation, be no point in requiring a fixed time for the termination of the trust. We are of the opinion therefore that no definite time is fixed in this deposit agreement in which to terminate the trust. If it be said that it is provided in the deposit agreement that, upon the appointment of a trustee or the creation of a corporation, such trust would be closed in twenty-one years thereafter, it is a sufficient answer to say that no such thing has occurred in this case. It is clear that the trust created by the deposit agreement was one arising out of law by the

relation of the parties to that agreement and, since the committee was required to procure title to the property and secure the acquisition of all outstanding bonds or settle with those who would not deposit, that the trust created thereby was an active trust.

In a suit for partition, the plaintiff must either allege facts showing a legal estate in himself at the time of filing the complaint, or allege facts which show he is the equitable owner, with such additional circumstances as would justify a court of equity in vesting in him a legal estate in the realty, by decree of court, which estate, in the same proceeding, may be made the subject of partition and division among the interested parties. *Harris* v. *Ingleside Building Corp.* 370 Ill. 617.

An equitable title, however, is not necessarily partitionable, as there are many situations where it is refused from equitable considerations, one of which is where the title is held subject to an active trust. (*Burbach* v. *Burbach,* 217 Ill. 547.) Where a trustee is required to perform duties as trustee for the benefit of his *cestuis,* which include the acquisition of, and the duty to hold, the legal title to real ·estate in order to perform his duties as defined in the trust agreement, the trust is active and is not executed by section 3 of the Conveyance Act, which reenacted the substance of the Statute of Uses. *Kathman* v. *Sheehan,* 332 Ill. 280; *McFall* v. *Kirkpatrick,* 236 Ill. 281; *Johnson* v. *Lee,* 228 Ill. 167.

So far as the interests of the appellants are concerned, under the facts as shown by the pleadings, there was an equitable conversion of their interest in the property and they and other owners of certificates of beneficial interest were entitled only to the proceeds. (*Burbach* v. *Burbach,* 217 Ill. 547; *Robison* v. *Botkin,* 181 Ill. 182; *Crerar* v. *Williams,* 145 Ill. 625.) Equity considers that done which ought to be done, and everyone claiming property under an instrument directing its conversion must take such prop-

erty in the character impressed upon it by that instrument, and where such instrument in effect provides there shall be an equitable conversion, and the proceeds take the place of the property itself, such proceeds are regarded as personal property. *Stoff* v. *McGinn,* 178 Ill. 46; *Gammon* v. *Gammon,* 153 Ill. 41; *Hale* v. *Hale,* 125 Ill. 399; *Rankin* v. *Rankin,* 36 Ill. 293.

It is likewise a rule of equity, however, that once a trust is created it is thereafter to be treated as a trust. Therefore, in this case, an active trust having been created by an agreement which required the committee to acquire, for the benefit of depositing bondholders, the real estate securing the payment of the bonds, and to perform other duties therein delineated, it was the clear intent of the deposit agreement creating the trust that the same was to terminate as soon as practicable after the title to the propery had been acquired and the expressly stated duties of the committee to sell and distribute the net proceeds thereof had been accomplished. Equity will give a trustee reasonable time to perform the duties which he has obligated himself to perform. Upon his failure to carry out and perform his duties as a trustee, a court of equity will, upon proper application by those entitled to relief, take charge of the trust and the trustee and compel a winding up of the trust and a distribution to those entitled thereto. (*Mitchell* v. *Shortt,* 113 Ill. 251, 21 C. J. sec. 117.) Under the allegations of the complaint, the active duties of the committee, as trustees, other than closing out the property and making distribution, have been performed, and no reason now appears why the trust should not be terminated. We express no views concerning any decision of the case on its merits after the coming in of an answer.

The deposit agreement does not, in so many words, require the committee, if it does not convey title to a corporation or to a trustee or trustees, to sell the property within a definite time, but it is clear from the deposit

agreement that it was the intent that the trust be terminated as expeditiously as is consistent with the interests of the *cestuis que trustent,* and appellees, under their charges of delay for approximately ten years, are entitled to have a court of equity take jurisdiction of the trust for the purpose of determining whether the committee as trustee should be compelled to convert the corpus of the trust into money and make distribution of the proceeds. While appellants in their complaint did not make allegations sufficient to entitle them to partition of the real estate, yet, under their alternative prayer and prayer for general relief, they were entitled to an answer to their complaint.

Appellants have also urged that the court erred in not removing the committee and in not appointing a new committee to sell the property or form a corporation or trust. They contend also that the committee have paid themselves exorbitant fees and have purchased property other than that described in the trust deed, with income derived from the premises, without authority of the depositors or an order of court. These statements are on information and belief and do not specify any particular property purchased or fees awarded. Appellees say they have a right, under the provisions of the deposit agreement, to purchase property other than that covered by the trust deed. While provisions appear in the deposit agreement to the effect that the committee may acquire property subject to the trust deed, "or any other property or thing of use in the judgment of the committee, in promoting the interests of the depositors," it is clear that the committee are not thereby authorized to purchase, with the proceeds of the trust, property other than the mortgaged premises, or property used in connection with the operation of the real estate, or to procure the fee thereto, unless so doing would be "promoting the interests of the depositors." The interest of the depositors lies in procuring the return of the loan represented by their bonds and this does not authorize

the committee to deal in real estate though it might prove to be to the benefit of the bondholders. A trustee is limited in his powers strictly to the provisions of the instru-- ment creating such powers. *McGookey* v. *Winter*, 381 Ill. 516.

Appellants, having stated a case which entitles them to equitable relief under their alternative prayer, are entitled to have their complaint answered, and the chancellor erred in sustaining appellees' motion to strike. The decree striking the complaint and dismissing the suit for want of equity is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*